### George J. HOHMAN

v.

### Cornelius HOGAN, Commissioner of Corrections, State of Vermont, and Michael Chater, Superintendent, Rutland Community Correctional Center.

#### Civ. A. No. 79–90.

United States District Court,
D. Vermont.

Aug. 3, 1979.

---

George J. Hohman, pro se.

Richard A. Unger, Asst. Atty. Gen., Montpelier, Vt., for defendant.

## MEMORANDUM OF DECISION

HOLDEN, Chief Judge.

The petitioner, George J. Hohman, has instituted this action against certain Vermont correctional officers to obtain a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The defendants answered the complaint. At the time of the initial hearing, when the defendants produced the applicant, the Attorney General of Vermont was directed to supply a transcript of a hearing before the Supreme Court of Vermont which lies at the root of one of the petitioner's claims that he is unlawfully held in custody by the defendants. At the same hearing in this court, the petitioner declined to accept assignment of counsel under the Criminal Justice Act. The case has been submitted on the application and the defendant's answer as supplemented by the record in the state supreme court proceeding.

On a retrial [1] of a charge of murder of a young girl, the petitioner was found guilty of manslaughter on January 13, 1979 in the Washington Superior Court. Judgment was entered on the verdict January 15, 1979 and the court continued the conditions of release imposed September 29, 1978, before retrial. The petitioner filed notice of appeal from the judgment of conviction on January 26, 1979. The petitioner was sentenced on February 27, 1979 to a term of imprisonment of not less than nine nor more than fifteen years. At the time sentence was imposed the trial court ordered the defendant placed in execution of the sentence. The following day the petitioner, pursuant to Rule 9(a) of the Vermont Rules of Appellate Procedure, appealed the order of the trial court which terminated his bail release.

The Supreme Court of Vermont held the trial court was divested of jurisdiction to place the defendant in execution of sentence by force of the petitioner's notice of appeal filed January 26, 1979. The supreme court reversed the trial court's revocation of bail and ordered the release of the petitioner under the terms and conditions established by the Addison County Superior Court on September 29, 1978. *State v. Hohman*, 400 A.2d 979 (1979).

The order of September 29, 1978 included as conditions of the petitioner's pretrial release:

> 3. Defendant shall refrain from the use of any alcoholic beverages or other

---

1. See *State v. Hohman*, 136 Vt. 341, 392 A.2d 935 (1978).

drugs, except upon the specific written prescription of a licensed physician.

\* \* \* \* \* \*

6. The execution of a bail bond by the defendant with sufficient solvent sureties, or in lieu thereof deposit of cash in the amount of $30,000, shall be made by the defendant.

\* \* \* \* \* \*

8. Violations of any of the conditions may cause the Court to issue an arrest warrant for defendant's arrest and a review of these conditions.

\* \* \* \* \* \*

11. Defendant shall abide by this Order until the final determination of the prosecution herein, or until defendant is discharged from it by this Court.

Subsequent to the petitioner's release, pursuant to the mandate of the supreme court, the State Attorney General filed a written motion, addressed to the Vermont appellate court, requesting revocation of bail and an order placing the petitioner in execution of the sentence imposed by the trial court. The motion is principally grounded on Rule 9(b) of the Vermont Rules of Appellate Procedure which provides:

Upon the filing of a notice of appeal from a judgment of conviction, a defendant released in accordance with Criminal Rule 46(c) shall continue on release pending appeal under the same terms and conditions as were previously imposed. Thereafter, a motion for release or for amendment of the conditions of release pending appeal may be made by either party to the Supreme Court or to a justice thereof. The motion shall be determined promptly upon such papers, affidavits, and portions of the record as the parties shall present and after reasonable notice to the other party. The Supreme Court or a justice thereof may order the release of a defendant in detention pending disposition of the motion.[2]

V.R.Cr.P. 46(c) provides as follows:

Upon a judgment of conviction, the trial judge shall review the terms and conditions of release and may terminate them or may continue or alter them pending sentence or pending notice of appeal or the expiration of the time allowed for filing notice of appeal. . . .

The State's motion was supported by the affidavits of Lieutenant Wallace L. Mattison and Gary L. Briggs of the Town of Bennington Police Department. The sworn statements of the police officers inform that at 6:35 P.M. on March 21, 1979, Lt. Mattison received a telephone call from the petitioner stating that he (the petitioner) wanted to be transported to the Vermont state correctional facility at Rutland because he was "all up tight." According to the police affidavit, the petitioner continued—"You know what happened before. I feel just like I did before and would like to go back to Rutland before I do something again." The petitioner requested Lt. Mattison to go to his home and pick him up.

The respective affidavits of Lt. Mattison and Officer Briggs state that, upon observation of the petitioner's appearance, odor of alcohol and unsteady carriage, they were of the opinion that the petitioner was intoxicated.[3] The petitioner was taken into protective custody, pursuant to the procedures provided in 18 V.S.A. § 9143 relating to alcoholism and alcohol abuse.

The State's motion also included a completed official form signed by the arresting officer and certified by the "alcohol counselor," designated by the state secretary of

---

**2.** Reporter's Notes—include the statement; Rule 9(b) provides that a release authorized under Criminal Rule 46(c) prior to the filing of a notice of appeal shall continue after the filing of such notice upon the same conditions. Thereafter control of the release decision is in the Supreme Court.

**3.** The affidavit of Officer Briggs states:

Hohman told us that he had not been drinking but said this in a joking manner but then said he couldn't say anything because he would be in violation of his bail.

the agency of human services. 18 V.S.A. § 9142(7)(14). The counselor, on the day in question, certified ". . . that this individual (George Hohman) has been evaluated by me and determined to be incapacitated." The petition was lodged in the Rutland Correctional Center March 21, 1979 and released the following day.

The defendants' answer to the present petition establishes that on April 2, 1979, the state supreme court sitting *en banc* on April 2, 1979, after notice to the petitioner's counsel, conducted a hearing on the state's motion to revoke bail and place the petitioner in execution of the sentence imposed February 27, 1979.

The petitioner appeared by his counsel on appeal, William A. Nelson, Esquire. At the time of the hearing by the supreme court, no papers opposing the State's motion were filed in behalf of the petitioner. The affidavit of William Nelson, Appellate Defender, filed in this court, undertakes to explain that after being notified by the deputy clerk, Vermont Supreme Court, of the time and place of hearing, he was informed that no witnesses would be required and the petitioner's presence was unnecessary. The affidavit continues:

5. On the strength of this advice Mr. Hohman decided not to be present at the argument (of the State's motion).

4. This appears from the following colloquy between members of the court and counsel for the petitioner:

ATTORNEY NELSON: Yes. We are saying that we want to make a showing through witnesses.

THE COURT: That isn't responsive to my question.

ATTORNEY NELSON: I can't speak to my client now. I have talked with him but I can't violate a privileged communication. We do have evidence to present concerning the underlying charges and concerning also the second half of the matter which I think, I think is also constitutionally, constitutionally required hearing. You need a determination . . . .

THE COURT: I don't understand, Mr. Nelson, and someone can advise me, that is one I have never understood, that a hearing was required on a point that is conceded.

ATTORNEY NELSON: Well, the point is not conceded.

6. I also advised Mr. Hohman, mistakenly, that the Court could not revoke his bail status without affording him an evidentiary hearing.

7. Because of my belief that the Court would not take action without hearing testimony, I did not file any affidavits or other papers concerning the alleged violation of conditions of release, or the desireability (sic) of continuing defendant on bail status notwithstanding any technical violation.

8. I argued to the Supreme Court that due process required a hearing before liberty could be revoked, on two issues: 1. the underlying charge of a violation of conditions, and (if such violation was shown) 2. the proper disposition of the case, i. e. to continue the defendant on the same or amended conditions, or to revoke bail entirely.

9. After hearing the arguments of counsel, the Court recessed and later that day issued an order revoking bail without an opinion or statement of reasons.

The typed transcription of the audio recording of the oral arguments presented to the supreme court bears out the substance of the Appellate Defender's statement concerning the hearing on April 2, 1979.[4]

THE COURT: That is what I am trying to ask you.

ATTORNEY NELSON: I am sorry. The answer is no.

THE COURT: Do you concede the fact that he was committed to the Rutland Correctional Facility last week, whenever it was:

ATTORNEY NELSON: No, that . . . .

THE COURT: At his own.

ATTORNEY NELSON: Well, I can't speak to the underlying facts.

THE COURT: No, but that fact is conceded that he was actually in jail.

ATTORNEY NELSON: No. That factor is not disputed. He was there but the surrounding circumstances are matters that have to be, I think that he has the right to testify to. I think that . . . .

THE COURT: Is it a dispute that he was under the influence at the time or he had consumed alcoholic beverages?

ATTORNEY NELSON: Your Honor, I can't speak to that issue.

The meager and uncertified transcription of the hearing on April 2 indicates that those representing the State were not opposed to an evidentiary hearing. The supreme court was not so inclined. It appears from the questions addressed to the petitioner's counsel that the court was persuaded that the affidavits in support of the State's motion to terminate petitioner's release had been conceded by petitioner's request to be taken into custody and by his failure to submit any documents to oppose those supplied by the State. In any event, in disposing of the motion and placing the defendant in execution of his sentence, it is implicit that the court adhered to the specific provisions of Rule 9(a), *supra*, in that it decided the motion on oral arguments, the document and portions of the record submitted by the State.

■ The first question is whether the procedure followed by the Supreme Court of Vermont, in revoking the petitioner's bail, violates the Due Process Clause of the Fourteenth Amendment. The petitioner places total reliance on *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). In essence, the petitioner contends here, as he did in the state court, that liberty interests of the convicted felon released on bail during the pendency of his appeal are the same as those of a probationer and parolee. Apart from the obvious difference in the status of the subjects, it must be accepted that the conditional liberty involved is within the protection of the Fourteenth Amendment. "Its termination calls for some orderly process, however informal." *Morrissey, supra*, 408 U.S. at 482, 92 S.Ct. at 2601.

In measuring the nature of the process due, it must be borne in mind that the procedure afforded the probationer in *Gagnon* and the parolee in *Morrissey* was administered by correction personnel, outside the court system. The procedure which resulted in the petitioner's bail revocation was conducted by the highest tribunal in the State of Vermont.

This was in keeping with the teaching of the Supreme Court of the United States that a State should provide some independent decision maker other than the administrative case worker.

> In our view, due process requires that after the arrest, the determination that reasonable ground exists for revocation of parole should be made by someone not directly involved in the case.

*Morrissey v. Brewer, supra*, 408 U.S. at 485, 92 S.Ct. at 2602.

In terms of probation and parole revocation, the Court observed two important stages. The first is the preliminary hearing to determine whether there is probable cause or reasonable ground to believe the subject has violated the conditions of his release. *Id.*

■ The defendants' answer to the petition establishes without question that the state court was presented with undisputed facts which provided reasonable ground for believing the conditions of the petitioner's release had been violated. The record is clear that this requirement of due process has been provided.

■ The next question is whether the petitioner was afforded due process prior to

---

THE COURT: You don't dispute the affidavit. You just stand mute.

ATTORNEY NELSON: We stand mute as to the affidavit.

THE COURT: Do you have any counter affidavits?

ATTORNEY NELSON: If the court feels that a hearing is not required, we ask for an opportunity to file counter affidavit. I think we are entitled to a hearing on two issues; not only the question of the underlying violation, but also the question of what to do about it if it happened. That's the two

stages that a parolee and probationer are entitled to under what the Supreme Court has written in the Morrissey and Gagnon cases.

THE COURT: Nothing precludes you from making that second argument now does it?

ATTORNEY NELSON: Well, yes, I can make the argument but I would like to have witnesses make it for me. The testimony of Mr. Hohman is something we would want to put on as well as the testimony of Mr. O'Brien, the counselor he's seeing now.

the final decision on revocation of his conditional release. As to the second stage, the teaching of *Morrissey*, confirmed in *Gagnon*, requires:

> This hearing must be the basis for more than determining probable cause; it must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation. The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation. The revocation hearing must be tendered within a reasonable time after the parolee is taken into custody. A lapse of two months, as respondents suggest occurs in some cases, would not appear to be unreasonable.
>
> We cannot write a code of procedure; that is the responsibility of each State. Most States have done so by legislation, others by judicial decision usually on due process grounds. Our task is limited to deciding the minimum requirements of due process. They include (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial.

408 U.S. at 488–489, 92 S.Ct. at 2603–2604.

Examining the second stage of the revocation procedure as it relates to the pre-

cepts quoted above, the court accepts the defendants' answer to be true. 28 U.S.C. § 2248. The record submitted establishes beyond question:

(a) The petitioner had ample notice of the claimed violation of the conditions of his release.

(b) There was full disclosure of the evidence against him.

(c) The hearing was conducted by a "neutral and detached tribunal."

The remaining requirements are not settled by the record presented.

While the petitioner was given an opportunity to appear in person, as shown by the affidavit of his assigned counsel, the requests of the petitioner's counsel that he be allowed to present live witnesses and to file counter affidavits, in the event the court denied an evidentiary hearing, were foreclosed. See Footnote 4.

Perhaps it can be said as to (d) *supra*, that the petitioner's right to confront and cross-examine adverse witnesses was not asserted at the hearing on April 2, 1979, and no opposing affidavits were presented to the court to call into question the sworn statements of the Bennington police officers within the provisions of Rule 9 V.R. A.P. At least it could be argued that this shortage constituted "good cause" for not allowing confrontations. However, there was no specific finding by the court to this effect. If the court regarded these requirements to have been waived, it should have so stated.

That brings us to the final requirement, stated in *Morrissey* under rubric (f), which is a written statement by the fact finders as to the evidence relied on and the reasons for revoking the conditional release. The Vermont court revoked the petitioner's release by its written order filed after the hearing on April 2, 1979, signed by the Justices, directing the Clerk to enter:

> On petition of the State, bail is terminated. V.R.A.P. 9(b). Defendant is committed to the custody of the Commissioner of Corrections forthwith under the

sentence imposed by the Washington Superior Court in this cause. Let a mittimus issue accordingly.

Here lies the heart of the problem. It may well be that the state court had legally sufficient reason to revoke bail on the strength of the record before it. This court is mindful that the question whether a convicted person should be released on bail pending appeal rests in the court's discretion. *United States v. Baca*, 444 F.2d 1292 (5th Cir.) *cert. denied* 404 U.S. 979, 92 S.Ct. 347, 30 L.Ed.2d 294 (1979). Whether in the state or federal domain, there is no constitutional right to be at liberty on bail following a conviction during the pendency of an appeal. *See Sims v. Wainwright*, 307 F.Supp. 116 (S.D.Fla.1969).[5]

Our concern in this case is not the grant of release pending appeal; the question is revocation of bail after release had been ordered. The petitioner had gained conditional release by virtue of the prior order of the court on March 7, 1979. Once at liberty, albeit conditional, his return to custody invoked the essentials of due process under the conditions prescribed in *Gagnon v. Scarpelli, supra*, 411 U.S. at 781, 93 S.Ct. 1756, and *Morrissey v. Brewer*, 408 U.S. at 481, 92 S.Ct. 2593. The shortages in the state proceedings pointed out above, and particularly the failure of the court, sitting as the trier of the fact, to state the evidence relied on and the reasons for terminating his conditional release on bail, do not require that his present confinement be terminated. He is now held on probable cause. The evidence that he had violated the conditions of his bail is convincing. Nonetheless, the petitioner has been denied the opportunity to present evidence to oppose the State's motion. More importantly, he is entitled to know the reasons why that opportunity was precluded and the factual basis upon which his conditional liberty was revoked.

For the reasons stated, the court is constrained to forthwith remand the cause to the Supreme Court of Vermont to afford that tribunal a reasonable opportunity to make an expeditious redetermination of the State's motion, in keeping with the constitutional demands of due process, as those standards have been established by the Supreme Court of the United States in *Morrissey v. Brewer* and *Gagnon v. Scarpelli, supra*. This is the course indicated in *Sigler v. Parker*, 396 U.S. 482, 484, 90 S.Ct. 667, 24 L.Ed.2d 672 (1970). Considerations of federal-state comity require it. *See Preiser v. Rodriguez*, 411 U.S. 475, 491, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).[6]

It is so ORDERED.

---

5. There is persuasive authority in this circuit that the denial of bail after conviction is frequently justifiable, but it should be done on an individual rather than a blanket basis, with the reason stated, consistent with the applicable statute and rules of court. *See United States v. Fields*, 466 F.2d 119 (2d Cir. 1972). 13 V.S.A. § 7554(d) seems to require a state judicial officer in bail review cases to set forth the reasons for continuing a person in custody. This is consistent with the provisions of the federal statute, 18 U.S.C. § 3146.

6. In reaching this result, the court perceives no valid reason to consider the first ground of the petitioner's complaint to the effect that the condition imposed against use of alcohol is unconstitutional. Ground one of the petitioner's application includes the averment:

To require a person (with a known alochol (sic) problem) not to drink and not to require him to receive treatment is clearly un-constitutional.

Plaintiff in this action has a record of alochol (sic) abuse and when he sought help for it, his own admissions were used against him to have him deprived of his liberty by terminating his bail.

The court regards this aspect of the complaint as stating no constitutional claim. It merely confirms the substance of the State's motion that the petitioner had violated the conditions of his bail and primarily concerns a question of state law. *See* 18 V.S.A. §§ 9141–9144, Ch. 213. Alcoholism and Alcohol Abuse.