## S96A1761. HOOD v. CARSTEN.

(481 SE2d 525)

HUNSTEIN, Justice.

Appellant Tommy Leon Hood was indicted on charges of aggravated assault and stalking. As a condition of bond, Hood was ordered to have no contact with the victim or her place of business. Less than three months after being released on bond, Hood telephoned the victim at her home insisting that she meet with him. The victim

---

informed the district attorney's office of the telephone call and expressed concern for her safety and that of her family. An assistant district attorney assigned to the case presented an ex parte motion to revoke bond to Judge Stark of the Gwinnett Superior Court. Judge Stark signed the order revoking bond on March 11, 1996 and scheduled a hearing on the bond revocation for March 14, 1996. On March 12, 1996, defense counsel was made aware of the order and the allegations upon which the bond revocation was based and was notified of the March 14 hearing date.

Hood appeared with counsel on March 14 for the scheduled hearing and immediately moved to recuse Judge Stark because he had signed the order revoking bond ex parte. After consideration of Hood's motion, Judge Stark recused himself and the matter was assigned to Judge Winegarden. Appellant was taken into custody at the conclusion of the March 14 hearing. Judge Winegarden scheduled a hearing for March 27, 1996 to consider Hood's motion to rescind the order revoking bond and petition for habeas corpus relief. Following the March 27 hearing at which the court did not review the underlying merits of the order revoking bond, the trial court denied both the motion to rescind and petition for habeas corpus. Hood appeals from the denial of his petition for habeas corpus and we reverse.

Hood contends he is entitled to habeas corpus relief because Judge Stark's order revoking bond was entered without notice or an opportunity to be heard in violation of his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and Art. I, Sec. I, Par. I of the Constitution of the State of Georgia (1983). Both the Georgia and United States Constitutions prohibit the state from depriving "any person of life, liberty, or property, without due process of law." United States Const., amend. XIV, sec. 1; see also Ga. Const., supra. "The fundamental idea of due process is notice and an opportunity to be heard. [Cit.] Due process [does not guarantee] a particular form or method of state procedure. [Cit.]" *Nix v. Long Mtn. Resources*, 262 Ga. 506, 509 (422 SE2d 195) (1992). Rather, as the United States Supreme Court recognized in *Mathews v. Eldridge*, 424 U. S. 319, 334-335 (96 SC 893, 47 LE2d 18) (1976):

> " '[d]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." [Cit.] "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U. S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

We are unaware of and the parties have not presented any specific guidelines under Georgia law pertaining to a trial court's power

to revoke a bond.[1] It is clear that trial courts have such power and the decision to revoke the appearance bond of a person charged with stalking lies within the discretion of the trial judge. See OCGA § 17-6-1. Because a bond revocation involves the deprivation of one's liberty, however, the trial court's decision to revoke bond must comport with at least minimal state and federal due process requirements. *Morrissey*, supra at 482 (liberty of parolee, although indeterminate, is valuable and must be seen as within the protection of the Fourteenth Amendment); *Fuentes v. Shevin*, 407 U. S. 67, 84 (92 SC 1983, 32 LE2d 556) (1972) (due process applies where nature of the interest is within contemplation of "liberty and property" language of the Fourteenth Amendment); *Zachos v. Huiet*, 195 Ga. 780, 786 (2) (25 SE2d 806) (1943) (principles of due process "extend to every proceeding which may deprive a person of life, liberty, or property"); see also *United States v. Delker*, 757 F2d 1390, 1397 (3rd Cir. 1985) (pre-trial detention implicates liberty interest and may not be imposed contrary to mandates of due process). The amount of process required must necessarily depend on the circumstances in each case.

In addition to aggravated assault, Hood was charged under Georgia's anti-stalking statute, OCGA § 16-5-90,[2] a statute enacted for the express purpose of providing additional protections to victims. See also OCGA § 16-5-93 (providing stalking victims greater rights to notification of release of person charged with stalking). In direct contravention of the trial court's order that he not have any contact with the victim,[3] Hood called the victim and demanded that she meet with

---

[1] Uniform Superior Court Rule 27.1 et seq. authorizes the establishment of pre-trial release programs in any county and the development and promulgation of rules, regulations and procedures pertaining to conditional release under the program, including such "as pertain to the issuance of a bench warrant for the arrest of any individual released under the program who fails to comply with the conditions of the release." Uniform Superior Court Rule 27.1 (E). The record does not indicate and the parties do not argue on this appeal that the trial court revoked bond pursuant to rules, regulations, or procedures promulgated as part of a pre-trial release program authorized by Uniform Superior Court Rule 27.1 et seq.

[2] OCGA § 16-5-90 (a) provides:
A person commits the offense of stalking when he or she follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person. For the purpose of this article, the term "place or places" shall include any public or private property occupied by the victim other than the residence of the defendant. For the purposes of this article, the term "harassing and intimidating" means a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear of death or bodily harm to himself or herself or to a member of his or her immediate family, and which serves no legitimate purpose. This Code section shall not be construed to require that an overt threat of death or bodily injury has been made.

[3] OCGA § 17-6-1 (b) (3) (A) authorized the trial court in this case to impose special conditions for bond by specifically providing:
Notwithstanding any other provision of law, a judge of a court of inquiry may, as a condition of bail or other pretrial release of a person who is charged with violating

him. Under such circumstances, courts must be vested with authority to act promptly to protect the victim and enforce the bond conditions imposed. At the same time, we believe the state and federal due process clauses require at a minimum that a hearing be held within a reasonable time after arrest or the filing by the State of a motion to revoke bond while information is fresh and witnesses and evidence are available. *Riggins v. State* 134 Ga. App. 941, 944 (216 SE2d 723) (1975) (decision to revoke appeal bond should be accompanied by at least minimal due process protections); see *King v. Zimmerman*, 632 FSupp. 271, 277 (E.D. Pa. 1986) (revocation of bail sua sponte, in chambers without providing notice or opportunity to be heard, is an arbitrary denial of due process); *Hohman v. Hogan*, 474 FSupp. 1290, 1296 (D.Vt. 1979) (defendant entitled to opportunity to present evidence in opposition to state's motion to revoke bail).

On March 11 the trial court entered its order revoking bond. Simultaneously, the court scheduled a hearing for March 14 on the State's motion to revoke bond and notice of the hearing was provided to Hood through his counsel. Hood was not arrested. Presumably, the March 14 hearing would have been structured to insure that the finding of a violation of a condition of bond and the exercise of the court's discretion to revoke bond were based on verified facts and to allow Hood an opportunity to present witnesses and evidence on his behalf. Because Hood moved to recuse Judge Stark at the March 14 hearing, however, the hearing on the merits of the State's motion to revoke bond did not proceed. The March 27 hearing addressed not the merits of the bond revocation but Hood's motion to rescind the order revoking bond and his petition for habeas corpus. Accordingly, Hood remains incarcerated having had no formal bond revocation hearing, no disclosure of the evidence against him, no opportunity to present evidence or witnesses or to confront witnesses,[4] and no written finding as to the evidence relied on by the court and reasons for revoking his bond. Under these facts, we find the trial court erred in failing to hold a hearing within a reasonable time after arrest or the filing of the State's motion to revoke bond to determine whether his bond should be reinstated and, therefore, Hood's petition for habeas relief should have been granted. Upon remittitur and after notice to Hood in compliance with OCGA § 17-1-1, the trial court is authorized to hold a hearing to revoke Hood's bond should the State so move.

---

Code Section 16-5-90 or 16-5-91, prohibit the defendant from entering or remaining present at the victim's school, place of employment, or other specified places at times when the victim is present or intentionally following such person.

[4] We do not decide in this appeal whether a defendant has a state constitutional right to confront all witnesses providing adverse information. See *Morrissey*, supra at 487 ("if the hearing officer determines that an informant would be subjected to risk of harm if his identity were disclosed, he need not be subjected to confrontation and cross-examination.").

Our decision in this case turns on the trial court's complete failure to provide a meaningful opportunity to be heard. We do not hold or intimate in this opinion that a court is precluded from ordering the arrest of a defendant believed to have violated a condition of bond where the arrest order is supported by the personal knowledge of the judge or by affidavit or testimony establishing a reasonable belief that a violation of a condition of bond has occurred. Nor is the State limited to moving for the revocation of bond when a defendant released on bond commits a subsequent criminal violation. The State is free to have the defendant arrested for the subsequent offense, to seek the revocation of bond for the original offense, or to pursue both courses simultaneously.

*Judgment reversed. All the Justices concur, except Carley, J., who concurs specially.*

CARLEY, Justice, concurring specially.

"In order for bail to be revoked, accused must have notice and an opportunity to be heard." 8 CJS 105, Bail, § 84. Thus, I agree with the majority that the revocation of Hood's bail must be predicated upon procedures which comport with due process. I also agree that, under the facts of this case, a reversible violation of Hood's due process rights occurred when he was incarcerated pursuant to the trial court's ex parte revocation order of March 11, 1996. As the majority notes, however, until such time as rules, regulations and procedures are promulgated pursuant to the authority of Uniform Superior Court Rule 27.1, there are no existing guidelines governing the revocation of bail. For that reason, I write separately to express my opinion as to how the issue of the revocation of Hood's bail could have been handled consistent with due process requirements. I believe that the revocation of Hood's bail is properly analogized to the revocation of probation based upon the alleged commission of another criminal act.

A defendant commits the offense of "stalking" when he or she "contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person." OCGA § 16-5-90 (a). "To 'contact' is readily understood by people of ordinary intelligence as meaning '(t)o get in touch with; communicate with.' [Cit.]" *Johnson v. State*, 264 Ga. 590, 591 (1) (449 SE2d 94) (1994). Where the grand jury returns an indictment for "stalking," the trial court is authorized to impose special conditions upon the grant of bail, which conditions are designed to proscribe the defendant's further contact with the alleged victim. OCGA § 17-6-1 (b) (3) (A). The public policy of this state clearly demands adherence to these conditions, since the General Assembly has defined the offense of "aggravated stalking" as the defendant's

commission of a subsequent proscribed act of stalking "in violation of" a "condition" of his or her "pretrial release. . . ." OCGA § 16-5-91 (a). Therefore, where the grand jury returns an indictment for "stalking" and the trial court imposes as a special condition of bail a prohibition upon any further contact with the victim, the defendant may not thereafter contact the victim without running the risk of being arrested and charged with *an entirely separate* count of "aggravated stalking."

Accordingly, if the assistant district attorney in this case had probable cause to believe that Hood contacted the victim in violation of the conditions of his bail on the original "stalking" charge, she could have sought a warrant for Hood's immediate arrest on the separate charge of "aggravated stalking." Pursuant to Hood's arrest for this separate charge, the issue of his bail would be exclusively for the superior court. OCGA § 17-6-1 (a) (12). At the hearing on Hood's bail, the superior court would be authorized to deny relief if it found one of the following factors: Hood posed a significant risk of fleeing or failing to appear as required; he posed a significant threat or danger to the victim; he posed a significant risk of committing another felony; or, he posed a significant risk of intimidating witnesses or otherwise obstructing justice. OCGA § 17-6-1 (e); *Ayala v. State*, 262 Ga. 704, 705 (1) (425 SE2d 282) (1993). If the superior court found one or more of these factors and denied bail for the separate subsequent "aggravated stalking" offense, Hood would be entitled to file an application for an interlocutory appeal to the Court of Appeals. See *Howard v. State*, 194 Ga. App. 857 (392 SE2d 562) (1990).

With regard to the revocation of Hood's bail on the original "stalking" charge, the assistant district attorney could have filed a motion seeking such revocation. Unlike a warrant for Hood's arrest on a separate "aggravated stalking" charge, however, such a revocation motion would have to be served on Hood in accordance with OCGA § 17-1-1, since there is no authority for an ex parte bail revocation hearing. Here, the trial court erroneously granted the ex parte motion to revoke Hood's bail, rather than correctly setting a hearing on the motion at which Hood would have the opportunity to contest the revocation of his bail. See *Riggins v. State*, 134 Ga. App. 941 (216 SE2d 723) (1975).

According to the majority at 583, it does not hold or intimate in its opinion

> that a court is precluded from ordering the arrest of a defendant believed to have violated a condition of [bail] where the arrest order is supported by the personal knowledge of the judge or by affidavit or testimony establishing a

> reasonable belief that a violation of a condition of [bail] has occurred.

I agree, but only if the violation of the condition of bail is itself an entirely separate criminal offense. The violation of a condition of *probation* is, in and of itself, an entirely separate crime for which the probationer can be arrested on probable cause. OCGA § 42-8-38; *Battle v. State*, 254 Ga. 666, 671 (3) (333 SE2d 599) (1985). There is, however, no comparable authority making the violation of a condition of *bail* an entirely separate criminal offense. OCGA § 17-17-7 certainly authorizes the trial court to *revoke* bail if the defendant commits or threatens to commit acts of physical violence against the victim or the victim's immediate family. However, there is nothing in that statute which authorizes the immediate *arrest* of a defendant pending the revocation of his bail. A probationer has been previously convicted and sentenced, but a defendant who is at liberty on pre-trial bail still retains the presumption of innocence. The Constitutions of the United States and of Georgia forbid an arrest except on probable cause to believe that a crime has been committed. Accordingly, unless and until the General Assembly enacts a statute comparable to OCGA § 42-8-38 making the violation of a condition of bail, in and of itself, a crime, the defendant cannot be arrested pending revocation of his bail unless his alleged violation constitutes the commission of an entirely separate crime. Thus, the majority opinion should not be read as holding or intimating that a trial court is authorized to order the arrest of a defendant believed to have violated a condition of bail, unless the trial court is presented probable cause to believe that, by such violation, the defendant committed an entirely separate crime.

As is true when a probationer allegedly commits another separate criminal offense, the State could have arrested Hood for the subsequent alleged "aggravated stalking" or sought the revocation of his bail for the original "stalking" offense or pursued both courses simultaneously. Because the State pursued neither course, but sought and obtained instead the revocation of bail by means of an ex parte order which was violative of due process, I concur in the majority's reversal of the denial of Hood's petition for pre-trial habeas corpus. However, upon filing of the remittitur in the trial court, the State may move for an immediate hearing to revoke Hood's bail, or it may seek the immediate arrest of Hood for "aggravated stalking." I agree with the majority that the State may "pursue both courses simultaneously."

DECIDED MARCH 7, 1997.

*Ramon J. Fajardo,* for appellant.

*Daniel J. Porter, District Attorney, Nancy J. Dupree, Phil Wiley, George F. Hutchinson III, Assistant District Attorneys,* for appellee.

*Wayne M. Purdom,* amicus curiae.