IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

**STATE OF TENNESSEE v. DALTON BRYCE PATTERSON**

**Circuit Court for Blount County**
**No. C-29194**

———————————————————

**No. E2025-01027-CCA-R8-CO**

———————————————————

**ORDER**

The Defendant, Dalton Bryce Patterson, filed a motion through counsel seeking review of the Blount County Criminal Court's June 4, 2025, order revoking his release on his own recognizance bond and imposing a monetary bond in the amount of $100,000. *See* Tenn. Code Ann. § 40-11-144; Tenn. R. App. P. 8. He contends that the trial court's use of "hold without bond" warrants for violations of pretrial release supervision violated his due process rights, *see State v. Burgins*, 464 S.W.3d 298, 306 (Tenn. 2015), and that the court improperly modified his bond based on alleged violations of his release conditions. The State opposes the motion, asserting that the trial court's actions were consistent with due process. Upon our review, we respectfully deny the Defendant's motion.

**FACTUAL BACKGROUND**

On October 17, 2023, the Defendant was arrested for rape arising from events alleged to have occurred on July 5, 2023. He was released on November 14, 2023, on his own recognizance, subject to conditions that included reporting to Blount County Pretrial Release and wearing a GPS monitor. Following a preliminary hearing on November 27, 2023, the case was bound over to the grand jury. On August 5, 2024, the grand jury returned an indictment charging the Defendant with two counts of rape, a Class B felony, and one count of attempted rape, a Class C felony. During this period, the trial court modified the conditions of release, reducing reporting requirements, permitting limited internet access for employment, and ultimately removing GPS monitoring.

On August 14, 2024, the trial court issued a bond violation warrant after the Defendant admitted to using Adderall without a prescription, and he was arrested.

Following a hearing on September 9-10, 2024, the court found a violation but reinstated release on recognizance with additional conditions, including GPS monitoring, weekly drug screens, and completion of an alcohol and drug assessment with compliance with any recommendations.

On January 31, 2025, a second violation warrant issued alleging that the Defendant failed to provide a requested doctor's note. He was arrested that same day and held without bond. During service of the warrant, a deputy also charged the Defendant with evading arrest, a Class A misdemeanor. On February 3, 2025, the trial court issued a third violation warrant based on the new charge. The State then moved on February 4, 2025, to revoke or increase the bond.

The trial court heard the State's motion and the Defendant's response on May 5, 2025. On May 16, 2025, the court found a violation related to the January 2025 incident but declined to revoke release, instead reinstating bond on previously imposed conditions. The Defendant was released on May 19, 2025, after GPS equipment was installed.

On May 23, 2025, the trial court issued a fourth violation warrant alleging that the Defendant tested positive for methamphetamine and admitted to methamphetamine use. He was arrested that day. On May 30, 2025, the State filed a second motion to revoke or increase the bond, and the Defendant sought immediate release. The court conducted a *Burgins* hearing on June 4, 2025, at which the supervising officer and a recovery-court technician testified regarding the admission and positive test. The trial court found a violation, revoked release on recognizance, and set bail at $100,000 with conditions to apply if bail were posted.

On June 4, 2025, the trial court entered its order modifying the Defendant's conditions of release. The Defendant remained incarcerated, unable to post the $100,000 bail. On July 10, 2025, he filed a motion for review of the trial court's order. The State filed a response in opposition on July 21, 2025.

Rule 8 of the Tennessee Rules of Appellate Procedure provides the procedural framework for appellate review of a trial court's actions regarding a defendant's release. *See* Tenn. Code Ann. § 40-11-144. Because such matters often come before this court without a formal record, the defendant must supply an *ad hoc* record containing the materials relevant to the motion. The Defendant's submission satisfies that requirement and is sufficient for our review.

2

## STANDARD OF APPELLATE REVIEW

We review a trial court's decision to revoke or modify a defendant's bail for an abuse of discretion. *See State v. Melson*, 638 S.W.2d 342, 358 (Tenn. 1982). A trial court abuses its discretion when it applies an incorrect legal standard, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or employs reasoning that causes an injustice to the complaining party. *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010). In setting the amount of an appearance bail, a trial court has "very wide latitude," and appellate courts are reluctant to "second-guess" that determination. *Id.* As our supreme court has explained, the abuse of discretion standard is a "less rigorous review" that does not permit this court to substitute its judgment for that of the trial court. *State v. McCaleb*, 582 S.W.3d 179, 185 (Tenn. 2019) (quoting *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)).

## ANALYSIS

### A.    MOOTNESS AND JUSTICIABILITY

Before turning to the merits, we address the justiciability of the Defendant's motion. Tennessee courts adjudicate only live controversies and do not issue advisory opinions. A case becomes moot when subsequent events eliminate a continuing, real interest in the outcome, such that judicial action would no longer affect the parties' rights. *See, e.g.*, *State v. Sokolosky*, No. M2022-00873-SC-R11-CD, 2025 WL 2016420, at *2 (Tenn. July 18, 2025) (recognizing that cases are moot when "the parties no longer have a continuing, real, live, and substantial interest in the outcome" (citation omitted)). Our supreme court has explained that courts may nevertheless proceed in limited circumstances, including issues "capable of repetition and of such short duration that [they] will evade judicial review," matters of great public importance or affecting the administration of justice, and cases where collateral consequences preserve a "genuine, existing controversy." *Id.*

Applying these principles here, the Defendant challenges the constitutional adequacy of his pre-hearing detention between May 23 and June 4, 2025. The trial court conducted a *Burgins* hearing on June 4 and entered a new bond order. Accordingly, this court cannot now grant the specific relief of release pending a hearing, as the narrow claim for immediate release has become moot. *See State v. Steen*, No. E2024-01919-CCA-R8-CO, slip op. at 7-9 (Tenn. Crim. App. Feb. 12, 2025) (Tenn. R. App. P. 8 Order), *no perm. app. filed*.

3

We nevertheless reach the timing question under the "capable of repetition yet evading review" doctrine. That doctrine applies when (1) the challenged action is too brief to be fully litigated before it ends, and (2) there is a reasonable expectation that the same complaining party will again be subject to the same action. *See State v. Montgomery*, 929 S.W.2d 409, 414 (Tenn. Crim. App. 1996). Short pre-hearing detentions in bail proceedings ordinarily conclude with a *Burgins* hearing before appellate review can occur, and the issue frequently recurs in cases involving multiple violation warrants and ongoing pretrial supervision. Indeed, it has arisen more than once in this very case. *See Steen*, slip op. at 7-9 (recognizing the recurring problem of "interim" detention pending a *Burgins* hearing). Addressing the timing requirement, therefore, bears directly on the administration of justice and warrants resolution here to provide guidance to trial courts.

## B.     BAIL REVOCATION AND PRE-HEARING DETENTION

Article I, section 15 of the Tennessee Constitution guarantees that a defendant is entitled to bail in all cases except capital offenses. *See also* Tenn. Code Ann. § 40-11-102 ("Before trial, all defendants shall be bailable by sufficient sureties, except for capital offenses where the proof is evident or the presumption great."). Article I, section 16 further prohibits the court from imposing excessive bail. *See State ex rel. Hemby v. O'Steen*, 559 S.W.2d 340, 341-42 (Tenn. Crim. App. 1977).

Within this constitutional framework, the trial court initially determines the conditions of release. The court may release a defendant on personal recognizance or an unsecured bond. Tenn. Code Ann. § 40-11-115. If the court concludes that such release is not appropriate, it must instead impose the least restrictive conditions reasonably likely to ensure both the defendant's appearance in court and the safety of the community. Tenn. Code Ann. §§ 40-11-116, -117. One such condition may include the posting of a secured bond. In setting bail, the trial court is further directed to require no more than is necessary to achieve those ends. Tenn. Code Ann. § 40-11-118(a).

### 1.     Revocation of Pretrial Bail

The right to pretrial release is not absolute, and it may be forfeited in the circumstances prescribed by statute. *See Burgins*, 464 S.W.3d at 306. Tennessee Code Annotated section 40-11-141(b) authorizes the trial court to revoke and terminate a defendant's bond and to order the defendant held without bail pending trial, or without release during trial, when the State proves that the defendant violated a condition of release, committed a criminal offense while on release, or engaged in conduct that obstructed the

4

orderly and expeditious progress of the trial or other proceedings. Tenn. Code Ann. § 40-11-141(b).

Because revocation implicates a defendant's conditional liberty interest, any decision to hold a defendant pending trial must comport with due process. *Burgins*, 464 S.W.3d at 310. Before revocation, the defendant is entitled to written notice of the alleged grounds for revocation and the time and place of the hearing, disclosure of the evidence, a meaningful opportunity to be heard and to present evidence, the right to confront and cross-examine adverse witnesses subject to reliability-based exceptions, and the right to make argument. The trial court must conduct an evidentiary hearing at which the State bears the burden to prove, by a preponderance of the evidence, one or more grounds under section 40-11-141(b). *Id.* at 310-11.

If the State carries its burden, the court may either revoke bail and hold the defendant until trial or continue bail with additional conditions or an increased bond amount. In choosing between these options, the court should consider whether additional conditions or an increased amount of bail would reasonably assure the defendant's appearance and protect the community under Tennessee Code Annotated section 40-11-116, together with the bail factors listed in section 40-11-118. Although *Burgins* did not prescribe a particular weighting of those factors, it made clear that revocation is appropriate when additional conditions or an increased bond would not be sufficient to assure the defendant's appearance at trial or protect public safety. *Id.* at 311.

### 2. Detention Before the Revocation Hearing

Of course, *Burgins* did not speak directly to whether and to what extent an accused admitted to bail can be arrested and detained before the revocation hearing. By statute, a trial court has the discretionary authority to order the arrest of a defendant for failing to comply with his or her conditions of release. Tenn. Code Ann. § 40-11-112(a) ("Upon an increase in the amount of bail required, the court having jurisdiction at the time of the increase shall declare a forfeiture and may issue a warrant for the arrest of the defendant."). However, under some circumstances, the statute goes further and requires that the trial court issue a warrant for the defendant's arrest pending a hearing:

> Upon the defendant's failure to comply with any condition of a bail bond or recognizance release, the court having jurisdiction at the time of the failure shall declare a forfeiture and may issue a warrant for the arrest of the

5

defendant; provided, that, if the defendant is charged with a Class A, B, C, or D felony, then the court *shall* issue a warrant for the arrest of the defendant.

Tenn. Code Ann. § 40-11-112(b) (emphasis added).[1]  Importantly, this statute does not prescribe the timing or content of the subsequent revocation hearing, nor does it dispense with the *Burgins* safeguards required to continue detention.

Because detention pending a revocation hearing implicates a defendant's conditional liberty interests, the authority conferred by section 40-11-112 must be exercised in conformity with due process principles.  Due process generally requires that a hearing be provided "at a meaningful time." *State v. AAA Aaron's Action Agency Bail Bonds*, 993 S.W.2d 81, 86 (Tenn. Crim. App. 1998) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547 (1985)).  This does not mean that the hearing must always precede arrest.  Instead, due process permits a post-deprivation hearing "as long as it is held within a reasonable time in light of the issues and interests at stake." *Id.*  In determining reasonableness, the court balances three factors: the importance of the private interest and the harm caused by its temporary loss; the government's interest and reasons for delay; and the risk of error in the pre-hearing decision. *Id.* (citing *Federal Deposit Ins. Corp. v. Mallen*, 486 U.S. 242 (1988)).

*Burgins* did not directly resolve whether pre-hearing detention is permissible.  It did, however, reference authorities that shed light on how legislatures and courts have balanced due process in this setting.  Those authorities confirm that temporary detention may be consistent with due process when grounded either in specific facts—such as an imminent threat to public safety, a victim, or a witness; a concrete risk of flight; or active obstruction of the proceedings—or in a valid legislative judgment addressing comparable risks.  Other jurisdictions, for example, have enacted statutes permitting short-term detention in similar circumstances. *See, e.g.*, Mass. Gen. Laws ch. 276, § 58 (authorizing detention for violations when release would "seriously endanger any person or the community"); N.Y. Crim. Proc. Law § 530.60 (permitting up to 72 hours of detention when a defendant on felony release commits another enumerated offense, such as a violent felony

---

[1]      In a footnote to his motion, the Defendant asserts that "[a]s in *Steen*, this case does not implicate Tennessee Code Annotated section 40-11-112(b)."  The record, however, reflects otherwise.  In the trial court, the State argued that section 40-11-112 authorized the Defendant's arrest upon an alleged violation and that *Burgins* did not preclude arrest for violating conditions of release before a revocation hearing.  At the June 4, 2025 hearing, the trial court also referenced its May 16, 2025 findings concerning the use of violation warrants to arrest and detain defendants without bond.  On this record, the State sufficiently raised the applicability of section 40-11-112 to permit our consideration.

or witness intimidation); Wis. Stat. § 969.08 (allowing up to seven days of detention where a defendant on release for a "serious crime" is charged with another "serious crime") (each cited in *Burgins*, 464 S.W.3d at 309). These examples do not govern Tennessee law, but they illustrate the broader principle that due process tolerates temporary detention where the balance of risks and liberty has been addressed by either specific facts or legislative judgment.

Tennessee Code Annotated section 40-11-112(b) embodies such a legislative judgment. By requiring arrest when a defendant on release for a Class A, B, C, or D felony violates release conditions, the statute reflects the General Assembly's conclusion that these defendants present heightened risks to public safety. That judgment justifies a brief period of detention once substantial evidence of a violation exists and weighs heavily in the due process balance. At the same time, section 40-11-112(b) cannot be read to permit open-ended confinement. Its purpose is to allow only the limited detention needed to bring the defendant before the court for a prompt *Burgins* hearing.

Hence, the revocation hearing must occur promptly, that is, as soon as practicable. An unjustified delay violates due process, although "no precise rules exist to determine whether a delay in holding a hearing rises to the level of a constitutional problem." *AAA Aaron's Action Agency Bail Bonds*, 993 S.W.2d at 86 (citations omitted). As one court has observed in a closely related context, "[a] bail revocation hearing must be conducted with the same promptness as a hearing in the first instance, allowing, of course, for variations according to circumstances[.]" *Mello v. Superior Court*, 370 A.2d 1262, 1266 (R.I. 1977) (also observing that "a 2-week delay, absent a defendant's consent, is not [to] be countenanced").

Consistent with these principles, the constitutionally appropriate interval between detention and the revocation hearing will generally be measured in days, not weeks—and certainly not months. Other jurisdictions, several of which the supreme court cited in *Burgins*, set concrete outer limits that illustrate this point. *See, e.g.*, Ala. R. Crim. P. 7.5 (hearing "without undue delay," and in any event within seventy-two hours of arrest); *Hood v. Carsten*, 481 S.E.2d 525, 528 (Ga. 1997) (hearing within a "reasonable time" after arrest or motion); N.H. Rev. Stat. Ann. § 597:7-a (hearing within thirty-six hours, excluding weekends and holidays); 725 Ill. Comp. Stat. 5/110-6 (hearing within seventy-two hours of the petition or court's motion); N.Y. Crim. Proc. Law § 530.60 (pre-hearing detention up to seventy-two hours in specified felony circumstances); Wis. Stat. § 969.08 (pre-hearing detention up to seven days in "serious crime" cases). Again, these authorities do

7

not control our interpretation of Tennessee law, but they underscore the expectation of promptness that *Burgins* embeds in our due process framework.

The converse holds true where detention is discretionary. The mandatory-arrest provisions of Tennessee Code Annotated section 40-11-112(b) reflect the General Assembly's judgment that violations by defendants charged with Class A through D felonies pose heightened risks and, standing alone, may justify immediate arrest. Outside those circumstances, due process is far less likely to be satisfied when a defendant is detained without an imminent risk of flight or a concrete danger to individuals or the community. Likewise, delays between arrest and hearing are unlikely to withstand constitutional scrutiny when the allegations are unverified or weak or when the delay results from administrative convenience rather than genuine necessity. In settings where detention is discretionary, *Burgins* and section 40-11-112 together underscore that, when the State can safely provide notice and hold the evidentiary hearing before restraining liberty, due process ordinarily requires it to do so.

### 3. Application to This Record

The record reflects that the Defendant's pre-hearing detention began on May 23, 2025, when he was arrested on a violation-of-release warrant alleging methamphetamine use, which he both admitted and confirmed by a positive drug screen. He remained in custody without bond until June 4, 2025, when the trial court conducted a *Burgins* hearing. At that hearing, the supervising officer and a recovery-court technician testified to the admission and test results, and the trial court found a violation and reinstated a $100,000 bond with prior conditions to apply if the bond were made.

Because the Defendant was on release for Class B and Class C felonies, Tennessee Code Annotated section 40-11-112(b) required issuance of the arrest warrant on the alleged violation. This statutory directive reflects a legislative judgment that violations of release conditions in such cases present heightened public-safety concerns. That judgment supports the Defendant's immediate arrest and favors a short custodial interval before the hearing.

The proof of violation—an admission of drug use and a positive drug screen—was serious and directly relevant to whether revocation was warranted. Even so, the record does not identify an imminent threat to a particular person, a concrete plan to flee, or contemporaneous obstruction that rendered a pre-deprivation hearing impracticable. The felony classifications and the violation itself justify the Defendant's arrest and initial

custody, but they do not, standing alone, establish the sustained urgency that would permit delaying the hearing for an extended period.

Here, the record reflects that the Defendant was released on May 19, 2025, after the trial court declined to revoke his bond on the third violation and reinstated the previously imposed conditions. Four days later, on May 23, 2025, the trial court issued a fourth violation warrant based on allegations that the Defendant tested positive for methamphetamine use and admitted such use. He was arrested that same day. The State filed its motion to revoke or increase bond on May 30, 2025, and the Defendant moved for immediate release. The trial court conducted the *Burgins* hearing on June 4, 2025, at which the supervising officer and a recovery-court technician testified concerning the violation.

Thus, the relevant period of pre-hearing detention was twelve days. Section 40-11-112(b) authorized the Defendant's arrest on May 23 because he was on release for Class B and Class C felonies, and the General Assembly's judgment of seriousness supports immediate arrest and temporary detention upon a credible allegation of violation. But the subsequent delay before the *Burgins* hearing raises due process concerns. We take notice that the Defendant was first taken into custody on the Friday before Memorial Day weekend, but the record contains no case-specific explanation for why the hearing could not have been convened more promptly than the second week following. The seriousness of the charges and the nature of the alleged violation justified immediate arrest, but they do not, standing alone, establish the sustained urgency necessary to defer the constitutional requirement that the hearing occur "as soon as practicable."[2]

Measured against that standard, the unexplained twelve-day interval between arrest and the hearing exceeds the constitutional tolerance recognized in *Burgins*. To be clear, not every delay raises the specter of a due process violation, but the absence of any specific

---

[2] The only explanation in the record for the delay is the trial court's observation that the hearing date was the "first day . . . that everybody's announced ready to go." While a continuance sought by the Defendant could justify additional time, delay arising from administrative scheduling or convenience generally cannot. The parties and trial courts possess a range of mechanisms to ensure timely hearings, including the use of judicial interchange, convening proceedings outside the county of origin within multi-county districts, employing remote technology when appropriate, or setting expedited or special dockets. Here, however, the State made no record of whether either party requested a continuance, whether another judge or courtroom was unavailable, or whether some circumstance rendered an earlier hearing impracticable. In the absence of such specific facts, we have no basis to conclude that the twelve-day delay satisfied the requirement that a revocation hearing be held "as soon as practicable."

9

findings in this record cannot support a conclusion that this delay was necessary and reasonable. We therefore hold that the State did not show in the trial court that the Defendant's pre-hearing detention comported with due process.

That holding, however, does not require further relief in this case. As in *Steen*, once the trial court conducts a *Burgins* hearing and issues a written order, the Defendant's custody is governed by that new order. *See Steen*, slip op. at 9. Any constitutional deficiency in the earlier detention is thereby cured. Here, the trial court held the hearing on June 4, 2025, received testimony, and entered an order reinstating bond in the amount of $100,000 with conditions. Because the Defendant's custody now rests upon that order, no further remedy is warranted beyond acknowledging the constitutional deficiency of the prior detention and providing guidance under the "capable of repetition yet evading review" doctrine.

## C.   REVOCATION OF BAIL

We turn finally to the trial court's decision to revoke the Defendant's recognizance bond and to reinstate the original $100,000 monetary bail. The American Bar Association has observed that the constitutional objections to preventive detention are diminished when a defendant, once released, demonstrates a deliberate intent to disregard reasonable conditions imposed for the protection of public safety. *See* American Bar Association, *Standards for Criminal Justice: Pretrial Release* (2d ed.), § 10-5.8(b), Commentary.

The record reflects such disregard here. On three prior occasions, the Defendant violated conditions of release, yet the trial court permitted him to remain on a recognizance bond. Following the fourth violation warrant, however, the Defendant admitted to methamphetamine use and tested positive for the same. This evidence supports the trial court's finding that the State proved, by a preponderance of the evidence, that the Defendant again violated a material condition of release.

Given this history, the trial court acted within its discretion in revoking the recognizance bond and reinstating the original $100,000 monetary bail. The court did not eliminate the possibility of bail altogether. Rather, it considered lesser measures and determined that a substantial monetary bond was necessary to protect public safety, to ensure compliance with release conditions, and to secure the Defendant's appearance at

trial.   In doing so, the trial court adhered to the framework established in *Burgins* and did not abuse its discretion.[3]

## CONCLUSION

In summary, we conclude that the court acted within its discretion in revoking the Defendant's recognizance bond and reinstating monetary bail.   Accordingly, the Defendant's motion for review is respectfully denied.

As the Defendant has been found indigent, the costs of this appeal are taxed to the State of Tennessee.

JUDGE TOM GREENHOLTZ
JUDGE KYLE A. HIXSON
JUDGE STEVEN W. SWORD

---

[3]   The Defendant does not advance an affordable bail argument in his motion before this court.   That said, we note that "[t]he right to bail, however, does not ensure a criminal defendant's ability to pay the amount of bail set by the court." *In re Sanford & Sons Bail Bonds, Inc.*, 96 S.W.3d 199, 202 (Tenn. Crim. App. 2002).   Further, "[e]ven if the [bond] amount set was more than [the Defendant] was in fact able to raise, there is no showing that the court's purpose in setting such amount was to prevent [the Defendant] from gaining his freedom rather than properly to assure that he would appear in court." *Melson*, 638 S.W.2d at 358; *see also State v. Wiggins*, No. W2000-02766-CCA-R3-CD, 2001 WL 1690193 (Tenn. Crim. App. May 28, 2002).