# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### February 5, 2015 Session

## STATE OF TENNESSEE v. LATICKIA TASHAY BURGINS

**Appeal by Permission from the Court of Criminal Appeals
Criminal Court for Knox County
No. 101255     Bobby R. McGee, Judge**

---

**No. E2014-02110-SC-R8-CO – Filed April 7, 2015**

---

We granted review in this case to determine whether Tennessee's bail revocation statute, Tennessee Code Annotated section 40-11-141(b), is constitutional, and if so, to establish the procedure to be followed in bail revocation proceedings.  A Knox County grand jury returned a presentment against the defendant for simple possession of marijuana.  The defendant posted bond and was released.  Subsequently, a Knox County grand jury issued a nineteen-count presentment against the defendant, charging her with multiple crimes, including attempted first degree murder, employing a firearm during the commission of a dangerous felony, attempted especially aggravated robbery, attempted carjacking, and aggravated assault.  The trial court, pursuant to Tennessee Code Annotated section 40-11-141(b), granted the State's motion to revoke the defendant's bail.  The Court of Criminal Appeals reversed, holding that the statute violated article I, section 15 of the Tennessee Constitution.  We hold that the Tennessee Constitution guarantees a defendant the right to pretrial release on bail, but this right is not absolute.  A defendant may forfeit her right to bail by subsequent criminal conduct.  Before pretrial bail can be revoked, the defendant is entitled to an evidentiary hearing.  We remand this case to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 8 Appeal by Permission; Judgment of the Court of Criminal
Appeals Reversed; Case Remanded to the Trial Court**

SHARON G. LEE, C.J., delivered the opinion of the Court, in which CORNELIA A. CLARK, GARY R. WADE, JEFFREY S. BIVINS, and HOLLY KIRBY, JJ., joined.

Herbert Slatery, III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; and John H. Bledsoe, Assistant Attorney General, for the appellant, State of Tennessee.

G. Michael Davis, University of Tennessee Legal Clinic Attorney; Wade V. Davies and Valorie K. Vojdik, Supervising Attorneys, Knoxville, Tennessee, for the appellee, Latickia Tashay Burgins.

**OPINION**

**I. Factual and Procedural Background**

On March 12, 2013, a Knox County grand jury returned a presentment against Latickia Tashay Burgins for the misdemeanor offense of simple possession of marijuana. Ms. Burgins' bail was set at $5000. On June 11, 2013, Ms. Burgins, through a bonding company, posted an appearance bond and was released from jail.

On or about March 8, 2014, while awaiting trial on the marijuana charge, Ms. Burgins allegedly was involved in an attempted carjacking in Knox County. On April 15, 2014, a Knox County grand jury issued a nineteen-count presentment against Ms. Burgins, charging her with multiple crimes, including attempted first degree murder, employing a firearm during the commission of a dangerous felony, attempted especially aggravated robbery, attempted carjacking, and aggravated assault. On April 24, 2014, a capias was served on Ms. Burgins.[1]

On April 25, 2014, the State moved to revoke Ms. Burgins' bail in the 2013 marijuana case based on Tennessee Code Annotated section 40-11-141(b) (2012) ("the revocation statute"). The motion alleged that Ms. Burgins had been arrested for allegedly committing serious criminal offenses while on bond and was a threat to the community. In response, Ms. Burgins moved the trial court to set bail and to declare the revocation statute unconstitutional under article I, section 15 of the Tennessee Constitution. On June 24, 2014, the trial court, without conducting an evidentiary hearing, revoked Ms. Burgins' bond, finding that the violent and serious nature of the crimes she was alleged to have committed while on bail created a "rational basis to believe that she's a violent person, and her release would be detrimental to the safety and welfare of the community." The trial court found that the revocation statute was constitutional, noting that a defendant is guaranteed an initial grant of pretrial bail in noncapital cases but there is no denial of the right to bail when it is revoked after the defendant has committed a crime of violence while released on pretrial bail.

Ms. Burgins sought review by the Court of Criminal Appeals under Tennessee Rule of Appellate Procedure 8(a). The Court of Criminal Appeals granted relief, holding

---

[1] After Ms. Burgins' arrest, the trial court set her bond for the carjacking-related offenses at $100,000. As of February 11, 2015, Ms. Burgins had not posted bond.

that the revocation statute violated article I, section 15 of the Tennessee Constitution to the extent that it permits a trial court to hold Ms. Burgins without bail pending trial. The intermediate appellate court remanded the case for consideration of the statutory factors outlined in Tennessee Code Annotated section 40-11-118(b) (2012) and the imposition of additional conditions for bail that may be necessary to reasonably assure the appearance of the defendant while at the same time protecting the safety of the public. *State v. Burgins*, No. E2014-02110-CCA-R8-CO, 2014 WL 6792690, at *3 (Tenn. Crim. App. Dec. 3, 2014).

The constitutionality of the revocation statute presents an issue of first impression and provides the opportunity both to resolve an important question of law and secure uniformity of decision. We granted the State's application for review under Tennessee Rule of Appellate Procedure 8 to determine whether Tennessee's bail revocation statute, Tennessee Code Annotated section 40-11-141(b), is constitutional, and if so, to establish the procedure to be followed in bail revocation proceedings.

## II. Analysis

### A.

Bail is a basic component of the American judicial system and is predicated on the principle "that a person accused of [a] crime shall not, until . . . finally adjudged guilty in the court of last resort, be absolutely compelled to undergo imprisonment or punishment." *Hudson v. Parker*, 156 U.S. 277, 285 (1895). Pretrial release on bail "permits the unhampered preparation of a defense[] and serves to prevent the infliction of punishment prior to conviction." *Stack v. Boyle*, 342 U.S. 1, 4 (1951) (citing *Hudson*, 156 U.S. at 285). Pretrial bail also accommodates the defendant's interest in pretrial liberty and "society's interest in assuring the defendant's presence at trial." Donald B. Verrilli, Jr., Note, *The Eighth Amendment and the Right to Bail: Historical Perspectives*, 82 Colum. L. Rev. 328, 329-30 (1982). *Compare Reynolds v. United States*, 80 S. Ct. 30, 32 (Douglas, Circuit Justice, 1959) ("The purpose of bail is to [e]nsure the defendant's appearance and submission to the judgment of the court."), *with Bandy v. United States*, 81 S. Ct. 197, 197 (Douglas, Circuit Justice, 1960) ("The fundamental tradition in this country is that one charged with a crime is not, in ordinary circumstances, imprisoned until after a judgment of guilt."). Denying bail can create serious and long-lasting adverse effects on a defendant. These adverse effects, when possible, should be mitigated in light of the constitutional principle that a defendant is innocent until proven guilty. *See Tidwell v. State*, 922 S.W.2d 497, 501 (Tenn. 1996) (stating that a criminal defendant "is presumed by law to be innocent until proven guilty" (quoting *State v. Shelton*, 851 S.W.2d 134, 139 (Tenn. 1993))). *See generally* 3 Joseph G. Cook, *Constitutional Rights of the Accused* § 13:3 (3d ed. 1996).

The origins of pretrial bail date back to medieval England, where it served "as a device to free untried prisoners." Daniel J. Freed & Patricia M. Wald, *Bail in the United States: 1964*, at 1 (1964). During this time, the penalty for most crimes was a monetary fine paid to the victim. Thus, the amount of bail, which was often guaranteed by a third-party surety, was identical to the potential penalty upon a conviction. *See* June Carbone, *Seeing Through the Emperor's New Clothes: Rediscovery of Basic Principles in the Administration of Bail*, 34 Syracuse L. Rev. 517, 519-20 (1983). Along with compensating victims, this system worked well to deter pretrial flight, as the surety was incentivized through financial responsibility to produce the accused for trial. *Id.* at 520.

Eventually, however, certain problems arose. Over time, the amount of bail gradually ceased to correlate with the potential punishment, as monetary fines gave way to capital and corporal punishments. *Id.* at 520, 522. Further, accused persons started to face longer and longer delays between accusation and trial, with sheriffs "exercis[ing] a broad and ill-defined discretionary power to bail . . . prisoners." *United States v. Edwards*, 430 A.2d 1321, 1326 (D.C. Cir. 1981) (en banc). These sheriffs also began to abuse their power widely, extorting money from many already entitled to release and accepting bribes in exchange for release from those not otherwise entitled to bail. *Id.*

Responding to historical abuses, the Magna Carta, created in 1215, established the due process foundation for the right to bail, and the Statute of Westminster I, passed in 1275, established the offenses for which bail was automatically granted. Matthew J. Hegreness, *America's Fundamental and Vanishing Right to Bail*, 55 Ariz. L. Rev. 909, 916-17 (2013) (explaining that the Statute of Westminster I left "the vast quantity of felonious, as well as nonfelonious, offenses as bailable"). In American colonial times through the era of the Constitution's inception, the right to bail was included in ordinances and statutes. Verrilli, *supra*, at 337-38. The United States Supreme Court later reaffirmed this right, stating, "[u]nless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning." *Stack*, 342 U.S. at 4.

The United States and Tennessee Constitutions provide for bail. The Eighth Amendment to the United States Constitution prohibits imposing "[e]xcessive bail" or "excessive fines" and inflicting "cruel and unusual punishments." U.S. Const. amend. VIII. Although this provision does not create a right to bail, *United States v. Salerno*, 481 U.S. 739, 754-55 (1987), it mandates that when pretrial bail is set for a criminal defendant, the amount shall not be excessive, *see Sellers v. United States*, 89 S. Ct. 36, 38 (Black, Circuit Justice, 1968). In contrast, the Tennessee Constitution guarantees that "all prisoners shall be bailable by sufficient sureties, unless for capital offen[s]es, when the proof is evident, or the presumption great." Tenn. Const. art. I, § 15. This constitutional provision grants a defendant the right to pretrial release on bail pending adjudication of criminal charges. *Swain v. State*, 527 S.W.2d 119, 120 (Tenn. 1975)

(citing *State ex rel. Brown v. Newell*, 216 Tenn. 284, 391 S.W.2d 667 (1965); *Goins v. State*, 192 Tenn. 32, 237 S.W.2d 8 (1950); *Hicks v. State*, 179 Tenn. 601, 168 S.W.2d 781 (1943); *Butt v. State*, 131 Tenn. 415, 175 S.W. 529 (1914)).[2]

Presently, forty-one states have constitutional provisions addressing an individual's right to bail.[3] The most common articulation of this bail protection is the "Consensus Right to Bail" clause, which states, "[a]ll persons shall be bailable by sufficient sureties, except for capital offenses when the proof is evident or the presumption great." Hegreness, *supra*, at 923. Tennessee's constitutional provision creating a fundamental right to pretrial bail is consistent with a majority of states and is essentially the same as the constitutional provisions of twenty other states.[4] At the state level, the right to pretrial bail has traditionally been a "fundamental constitutional right." *See* Hegreness, *supra*, at 921 (explaining that "[t]he Right to Bail Clause in state constitutions has been remarkably consistent over time and among the states").

**B.**

Ms. Burgins was afforded her constitutional right to pretrial bail after her arrest for possession of marijuana. The issue we address is whether a defendant who engages in criminal conduct while released on bond may forfeit the constitutional right to pretrial

---

[2] A defendant who has been convicted of a crime does not have a constitutional right to bail. The trial court, however, in its discretion and pursuant to applicable law, may grant bail to a defendant in a probation revocation proceeding. *See Butt*, 131 Tenn. at 415, 175 S.W. at 530-31; *see also* Tenn. R. Crim. P. 32(g).

[3] *See* Ala. Const. art. I, § 16; Alaska Const. art. I, § 11; Ariz. Const. art. II, § 22; Ark. Const. art. II, § 8; Cal. Const. art. I, § 12; Colo. Const. art. II, § 19; Conn. Const. art. I, § 8; Del. Const. art. I, § 12; Fla. Const. art. I, § 14; Idaho Const. art. I, § 6; Ill. Const. art. I, § 9; Ind. Const. art. I, § 17; Iowa Const. art. I, § 12; Kan. Const. B. of R. § 9; Ky. Const. § 16; La. Const. art. I, § 18; Me. Const. art. I, § 10; Mich. Const. art. I, § 15; Minn. Const. art. I, § 7; Miss. Const. art. III, § 29; Mo. Const. art. I, § 20; Mont. Const. art. II, § 21; Neb. Const. art. I, § 9; Nev. Const. art. I, § 7; N.J. Const. art. I, § 11; N.M. Const. art. II, § 13; N.D. Const. art. I, § 11; Ohio Const. art. I, § 9; Okla. Const. art. II, § 8; Or. Const. art. I, § 14; Pa. Const. art. I, § 14; R.I. Const. art. 1, § 9; S.C. Const. art. I, § 15; S.D. Const. art. VI, § 8; Tenn. Const. art. I, § 15; Tex. Const. art. I, § 11; Utah Const. art. I, § 8; Vt. Const. ch. II, § 40; Wash. Const. art. I, § 20; Wis. Const. art. I, § 8; Wyo. Const. art. I, § 14.

[4] *Compare* Tenn. Const. art. I, § 15, *with* Ala. Const. art. I, § 16; Alaska Const. art. I, § 11; Ark. Const. art. II, § 8; Conn. Const. art. I, § 8; Del. Const. art. I, § 12; Idaho Const. art. I, § 6; Ind. Const. art. I, § 17; Iowa Const. art. I, § 12; Kan. Const. B. of R. § 9; Ky. Const. § 16; La. Const. art. I, § 18; Me. Const. art. I, § 10; Minn. Const. art. I, § 7; Mo. Const. art. I, § 20; Mont. Const. art. II, § 21; N.J. Const. art. I, § 11; N.D. Const. art. I, § 11; Or. Const. art. I, § 14; S.D. Const. art. VI, § 8; *and* Wyo. Const. art. I, § 14.

bail. Tennessee Code Annotated section 40-11-141(b) provides that a court may revoke and terminate a defendant's bail:

> If after the defendant is released upon personal recognizance, an unsecured personal appearance bond, or any other bond approved by the court, the defendant violates a condition of release, is charged with an offense committed during the defendant's release, or engages in conduct which results in the obstruction of the orderly and expeditious progress of the trial or other proceedings, then the court may revoke and terminate the defendant's bond and order the defendant held without bail pending trial or without release during trial.

Tenn. Code Ann. § 40-11-141(b). Ms. Burgins challenges the constitutionality of this revocation statute, contending that her constitutional right to pretrial bail is absolute and cannot be revoked for subsequent misconduct. The State argues that the right to pretrial bail, like other constitutional rights, is not absolute and that a defendant's actions may cause her to forfeit that right.

Our review of the revocation statute requires both constitutional and statutory interpretation. We review these questions de novo, affording no presumption of correctness to the conclusions of the trial court. *State v. Crank*, No. E2012-01189-SC-R11-CD, 2015 WL 603158, at *4 (Tenn. Feb. 15, 2015) (citing *Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013)). When interpreting statutes, our primary function is to carry out legislative intent without broadening the statute beyond its intended scope. *Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 420 (Tenn. 2013) (quoting *State v. Strode*, 232 S.W.3d 1, 9 (Tenn. 2007)). We begin with the presumption that legislative acts are constitutional. *Riggs v. Burson*, 941 S.W.2d 44, 51 (Tenn. 1997) (citing *Petition of Burson*, 909 S.W.2d 768 (Tenn. 1995); *Davis-Kidd Booksellers, Inc. v. McWherter*, 866 S.W.2d 520, 529-30 (Tenn. 1993)). "[W]e must indulge every presumption and resolve every doubt in favor of constitutionality." *Lynch v. City of Jellico*, 205 S.W.3d 384, 390 (Tenn. 2006) (quoting *Vogel v. Wells Fargo Guard Servs.*, 937 S.W.2d 856, 858 (Tenn. 1996)). In so doing, "it is our duty to adopt a construction which will sustain a statute and avoid constitutional conflict if any reasonable construction exists that satisfies the requirements of the Constitution." *Davis-Kidd Booksellers*, 866 S.W.2d at 529; *State v. Sliger*, 846 S.W.2d 262, 263 (Tenn. 1993); *State v. Lyons*, 802 S.W.2d 590, 592 (Tenn. 1990); *Shelby Cnty. Election Comm'n v. Turner*, 755 S.W.2d 774, 777 (Tenn. 1988); *Kirk v. State*, 126 Tenn. 7, 10, 150 S.W. 83, 84 (1911).

The revocation statute is not in conflict with either the United States or Tennessee Constitutions. The plain language of the revocation statute does not prohibit or forbid pretrial bail following a defendant's arrest. The revocation statute only affects a

defendant's right to pretrial bail when the defendant has violated a condition of release, has engaged in criminal conduct while on bail, or has obstructed the orderly and expeditious progress of the trial or other proceedings.

A constitutional right is not always absolute and may be subject to forfeiture. For instance, parents have a fundamental right to the care, custody, and control of their children, *Troxel v. Granville*, 530 U.S. 57, 65 (2000), but that right can be forfeited upon proof of conduct that substantially harms the child, *In re Guardianship of Taylour L.*, No. W2013-01296-COA-R3-CV, 2015 WL 391834, at *3 (Tenn. Ct. App. Jan. 29, 2015) (quoting *In re B.C.W.*, No. M2007-00168-COA-R3-JV, 2008 WL 450616, at *3 (Tenn. Ct. App. Feb. 19, 2008)). A defendant may forfeit her Sixth Amendment right of confrontation by wrongfully procuring the absence of a witness at trial. *State v. Ivy*, 188 S.W.3d 132, 145-48 (Tenn. 2006). A defendant may forfeit her Sixth Amendment right to counsel if that right is used to "manipulate, delay, or disrupt trial proceedings." *State v. Carruthers*, 35 S.W.3d 516, 549 (Tenn. 2000); *see also id.* at 547 n.27 (observing that "by persisting in disruptive conduct," a defendant may lose his or her "constitutional right to be present throughout the trial" (citing *Illinois v. Allen*, 397 U.S. 337 (1970))). Likewise, an individual may forfeit her Second Amendment right to bear arms by committing a violent felony. *Blackwell v. Haslam*, No. M2012-01991-COA-R3-CV, 2013 WL 3379364, at *21 (Tenn. Ct. App. June 28, 2013), *perm. app. denied* (Oct. 16, 2013).

We hold that a defendant's constitutional right to pretrial bail is subject to forfeiture. This is consistent with our previous holding in *State v. Wallace*. 193 Tenn. 182, 186-87, 245 S.W.2d 192, 194-95 (1952). In *Wallace*, while the defendant was on bail awaiting trial in Tennessee, he was arrested and jailed in Indiana for a crime previously committed in that state. Because he was in jail in Indiana, he could not appear for trial in Tennessee. The State of Tennessee asserted that the defendant forfeited his right to bail because he did not appear for trial. *Id.* at 184-85, 245 S.W.2d at 193. However, no allegation was made that the defendant committed any crimes while on bail. This Court held in *Wallace* that under article I, section 15 of the Tennessee Constitution, a defendant is "entitled to bail as a matter of right, unless [that right is forfeited because of] failure to comply with the conditions of a prior bail bond upon which a forfeiture had been taken." *Id.* at 186, 245 S.W.2d at 193. Despite broad language questioning a court's ability to deny bail based on the forfeiture of a prior bond, the Court held that "one accused of crime may forfeit his constitutional right to bail," but the facts supporting forfeiture should be proven by "affirmative evidence." *Id.* at 186, 245 S.W.2d at 194-95. In *Wallace*, forfeiture had not been established, and the defendant's detention resulted from a crime committed before he was placed on bail in Tennessee. In contrast, the State contends Ms. Burgins forfeited her right to pretrial bail because she allegedly committed crimes while on bail. Thus, the facts in the present case are distinguishable from those of *Wallace*, and the two cases are not in conflict.

**C**.

The Due Process Clause of the Fourteenth Amendment and article I, section 8 of the Tennessee Constitution embody similar procedural protections and guarantees.[5] *Doe*, 751 S.W.2d at 838. The right to pretrial bail is explicitly afforded by the Tennessee Constitution, and though no right to bail is provided under the United States Constitution, bail revocation implicates substantial liberty interests protected under the Fourteenth Amendment. *Cf. Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (finding that the loss of liberty entailed in parole revocation proceedings is a serious deprivation requiring due process); *Gagnon v. Scarpelli*, 411 U.S. 778, 781 (1973) (finding the same for probation revocation proceedings).

Whenever the government seeks to deprive an individual of a constitutionally protected liberty or property interest, due process concerns are implicated. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569-78 (1972). A liberty interest rises to this level when an individual, if deprived of that interest, will be "condemned to suffer grievous loss." *Morrissey*, 408 U.S. at 481 (quoting *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 168 (1951)). "The question is not merely the 'weight' of the individual's interest, but whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." *Id.* (quoting *Fuentes v. Shevin*, 407 U.S. 67 (1972)).

The liberty interest of a defendant in continued pretrial release includes "many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the [defendant] and often on others." *See id.* at 482. As noted above, pretrial bail allows the defendant to participate in a wide range of activities that are important to the administration and preservation of justice and the presumption of innocence before conviction. Moreover, pretrial bail allows defendants to preserve the continuity of familial relationships and to provide financially for their families. Thus, pretrial bail

---

[5] In *Burford v. State*, this Court stated,

> Although the language of these provisions is different, the "law of the land" provision of [a]rticle I, [section] 8 of the Tennessee Constitution has been construed as synonymous with the "due process of law" provisions of the Fifth and Fourteenth Amendments to the U.S. Constitution. However, U.S. Supreme Court interpretations of the due process clauses of the U.S. Constitution only establish a minimum level of protection, and this Court, as the final arbiter of the Tennessee Constitution, is always free to expand the minimum level of protection mandated by the federal constitution.

845 S.W.2d 204, 207 (Tenn. 1992) (citation omitted) (citing *Doe v. Norris*, 751 S.W.2d 834, 838 (Tenn. 1988)).

revocation implicates liberty interests within the purview of the Fourteenth Amendment. Accordingly, the procedure to revoke pretrial bail must meet the requirements of due process embodied within the Fourteenth Amendment and article I, section 8 of the Tennessee Constitution.

The revocation statute provides the grounds for bail revocation but does not set forth the procedure for trial courts to follow when conducting a bail revocation proceeding. A clear procedure that complies with due process requirements and eliminates uncertainty and disparity at the trial court level is needed. To establish this procedure, we review constitutional due process requirements and the bail revocation procedures from other states and the federal system.

As noted, any pretrial bail revocation proceeding must comport with the due process requirements of the Fourteenth Amendment and article I, section 8 of the Tennessee Constitution. These protections "prevent the government from infringing upon significant property or liberty interests without first providing notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *State v. AAA Aaron's Action Agency Bail Bonds*, 993 S.W.2d 81, 85 (Tenn. Crim. App. 1998); *see also Fields v. Henry Cnty., Tenn.*, 701 F.3d 180, 185 (6th Cir. 2012) (stating that a successful due process claim requires proof that an individual was deprived of a life, liberty, or property interest (i.e., a forfeiture) without due process). For procedural due process, a "meaningful time" is one that gives the accused timely and adequate notice that a hearing regarding the deprivation of a right is scheduled to occur. *AAA Bail Bonds*, 993 S.W.2d at 86; *see Heyne v. Metro. Nashville Bd. of Pub. Educ.*, 380 S.W.3d 715, 732 (Tenn. 2012). A "meaningful manner" is one in which the contents of the notice are neither ambiguous nor obscure, but "clearly inform the person of the nature of the charge against him [or her]." *AAA Bail Bonds*, 993 S.W.2d at 86. The notice must also be "reasonably calculated under all the circumstances, to apprise interested parties of the claims of the opposing parties," *McClellan v. Bd. of Regents*, 921 S.W.2d 684, 688 (Tenn. 1996) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)) (internal quotation mark omitted), and it must "allow adequate preparation [to] reduce surprise." *Id.* (citing *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 (1978)). The individual must be provided an effective opportunity to be heard, defend against any adverse witnesses, make arguments, and present evidence. *In re B.G.J.*, 215 S.W.3d 396, 399 (Tenn. 2006) (quoting *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970)). Implicit in this opportunity to be heard is also the opportunity to respond, either in person or in writing, with reasons a proposed action should not be taken. *AAA Bail Bonds*, 993 S.W.2d at 86 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)). Finally, the procedural requirements provided within the hearing must be "appropriate to the nature of the case." *Loudermill*, 470 U.S. at 542 (quoting *Mullane*, 339 U.S. at 313). The formality necessary within the hearing depends on the importance of the interest at stake

and the "nature of the subsequent proceedings." *Id.* at 545 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971)).

In addition to the requirements of notice and an opportunity to be heard, the applicable standard of proof is important. While many states do not expressly provide for a standard, the clear trend is for the State to bear the burden of establishing the facts to support revocation. For instance, at least seven states require proof of facts supporting revocation by clear and convincing evidence. *See* Conn. Gen. Stat. Ann. § 54-64f(b) (2015); 725 Ill. Comp. Stat. Ann. 5/110-6(f)(2) (2014); Ind. Code Ann. § 35-33-8-5(d) (2015); Wis. Stat. Ann. § 969.08(5)(b) (2014); Ky. R. Crim. P. 4.42(3); La. Code Crim. Proc. art. 330 (2012); Wash. Crim. R. Ct. Ltd. J. 3.2 (2012). At least two states require a showing by a preponderance of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 44.04(c) (2013); Russell J. Davis, 30 Standard Pennsylvania Practice 2d § 140:52. Several states, while still placing the burden on the State, use a specialized standard of proof expressed in their respective constitutional provisions. *See, e.g.*, Nev. Rev. Stat. Ann. § 178.487 (2014) ("[U]pon a showing that the proof is evident or the presumption great that the defendant has committed a felony during the period of release, the defendant's bail may be revoked . . . ."); *see also* Del. Code Ann. tit. 11, § 2116 (2014) (establishing the standard of proof as "proof positive or presumption great"); *In re Bond Forfeiture in Cochise Cnty. Cause No. CR201100916*, 307 P.3d 980, 982 (Ariz. 2013) (establishing the standard of proof as "proof evident or the presumption great"). Still other states have articulated their own special standard of proof. *See, e.g.*, *Mello v. Superior Court*, 370 A.2d 1262, 1266 (R.I. 1977) (establishing the standard of proof as "beyond probable cause"); *State v. Kastanis*, 848 P.2d 673, 676 (Utah 1993) (establishing the standard of proof as "probable cause by clear and convincing evidence"). Conversely, at least seven states have embraced the federal standard and provide that probable cause, or some similar standard, establishes facts providing a basis for bail revocation. *See* Miss. Const. art. 3, § 29(2); Fla. Stat. Ann. § 903.0471 (2014); Mass. Gen. Laws Ann. ch. 276, § 58 (2014); N.H. Rev. Stat. Ann. § 597:7-a (2015); N.Y. Crim. Proc. Law § 530.60 (McKinney) (2015); Ala. R. Crim. P. 7.5; Ark. R. Crim. P. 9.6. However, of the states that employ the probable cause standard, only two of these states, Arkansas and Florida, have constitutional bail guarantees similar to those of the Tennessee Constitution.

Whether the right to pretrial bail derives from a constitutional provision or a statute, the vast majority of states grant a hearing to a person on bail before revoking that bail. *See, e.g.*, Conn. Gen. Stat. § 54-64f (providing that a bail revocation hearing is required under state law); 725 Ill. Comp. Stat. Ann. 5/110-6(f) (same); Mass. Gen. Laws Ann. ch. 276, § 58 (same); N.Y. Crim. Proc. Law § 530.60 (McKinney) (same); Wis. Stat. Ann. § 969.08(b) (same); Ala. R. Crim. P. 7.5 (same); Ky. R. Crim. P. 4.42(3) (same); *Parker v. State*, 626 S.E.2d 152, 154 (Ga. Ct. App. 2006) (same). While many

states provide for a hearing, the difference lies in the type of bail revocation hearing and the required standard of proof.[6]

In the federal system, although no absolute right to bail exists under the United States Constitution, safeguards exist to ensure procedural due process when determining pretrial release and detention. At a minimum, these procedures include "an inquiry . . . in the nature of a 'preliminary hearing'" that is "conducted at or reasonably near the place of the alleged . . . violation" and "as promptly as convenient." *Morrissey*, 408 U.S. at 485.

After a thorough review of applicable law, we hold that a pretrial bail revocation proceeding under Tennessee Code Annotated section 40-11-141(b) can be initiated by the trial judge, *sua sponte*, or by the State filing a written motion setting forth at least one statutory ground for revocation. The defendant is entitled to 1) written notice of the alleged grounds for revocation and the date, place, and time of the hearing, 2) disclosure of the evidence against him or her, 3) the meaningful opportunity to be heard and to present evidence, 4) the right to confront and cross-examine witnesses, and 5) the right to make arguments in his or her defense. The trial court must conduct an evidentiary

---

[6] A trend among the states is to conduct a pretrial bail revocation hearing as an adversarial proceeding that comports with standards of procedural due process. *See, e.g.*, 725 Ill. Comp. Stat. Ann. 5/110-6(f)(2) (providing that during a bond revocation hearing, "evidence shall be presented in open court with the opportunity [for the defendant] to testify, to present witnesses in his [or her] behalf, and to cross-examine witnesses if any are called by the State"); N.Y. Crim. Proc. Law § 530.60 (McKinney) (providing that at a bail revocation hearing, "[t]he defendant may cross-examine witnesses and may present relevant, admissible evidence on his [or her] own behalf"); S.C. Code Ann. § 17-15-55 (2014) (providing that a court "may not proceed with [a bond revocation] hearing if the defense counsel of record is not present"); Wis. Stat. Ann. § 969.08(5)(b) (providing that at a bond revocation hearing, "[t]he evidence shall be presented in open court with the right of confrontation, right to call witnesses, right of cross-examination[,] and right to representation by counsel"); Ky. R. Crim. P. 4.42(5) (providing that "the defendant . . . shall be granted an adversary hearing comporting with the requirements of due process"); *Hood v. Carsten*, 481 S.E.2d 525, 529 (Ga. 1997) (finding that before revoking bond, a trial court must provide a defendant "a meaningful opportunity to be heard"); *State v. Maccioli*, 265 A.2d 561, 562 (N.J. Super. Ct. Law Div. 1970) (finding that the State must produce witnesses at a bond revocation hearing so that the defense has the opportunity to cross-examine and confront them); *State v. David*, 692 P.2d 524, 530 (N.M. Ct. App. 1984) (finding that an accused has the right to the due process requirements of notice and an opportunity to be heard and the right to counsel); *Marshall v. Casey*, 324 S.E.2d 346, 351 (W. Va. 1984) (finding that bail revocation hearings should be governed by West Virginia Rule of Criminal Procedure 46, which provides that "[b]oth the attorney for the state and the defendant may offer evidence in their behalf"). *But see Reeves v. State*, 548 S.W.2d 822, 823 (Ark. 1977) (finding that a bond revocation hearing is not "a hearing of an adversary nature which required representation by counsel"); *Parker v. State*, 843 So.2d 871, 880 (Fla. 2003) (finding that in a bond revocation proceeding, the defendant is not entitled to an adversarial hearing).

hearing at which the State is required to prove, by a preponderance of the evidence, sufficient ground(s) under Tennessee Code Annotated section 40-11-141(b) to support a revocation.[7] The evidentiary hearing need not be a mini-trial of the alleged conduct constituting the ground(s) for revocation. Moreover, the requirements for the revocation proceeding shall be somewhat flexible in that the trial court shall be able to consider factual testimony and documentary proof supporting the grounds for revocation of pretrial bail. In addition to documentary proof, the State must also present testimony from a corroborating witness or witnesses as to facts supporting the allegations contained in the documents. Hearsay evidence may be admitted when the trial court finds that it is reliable. *See generally State v. Wade*, 863 S.W.2d 406 (Tenn. 1993). At the close of proof, if the trial court finds that the State has shown, by a preponderance of the evidence, that the defendant has violated a condition of release, has committed a criminal offense while released on bond, or has engaged in conduct resulting in the obstruction of the orderly and expeditious progress of the trial or other proceedings, then the trial court may either revoke bail and hold the defendant until trial or continue bail with the possibility of additional conditions or an increased bond amount. In determining which option is appropriate, the trial court should consider 1) whether any additional bail conditions or an increased amount of bail would assure the appearance of the defendant at trial and protect the safety of the community under Tennessee Code Annotated section 40-11-116 and 2) the bail factors listed in Tennessee Code Annotated section 40-11-118.[8]

---

[7] Pretrial bail and probation/parole revocation proceedings share some similarities. The statutory burden of proof in probation revocation proceedings is preponderance of the evidence. Tenn. Code Ann. § 40-35-311(e)(1) (2014). We note, however, that probation and parole are granted to those persons who have been convicted of a crime after having been afforded the full array of due process protections before, during, and after a criminal trial or plea. *See Gagnon*, 411 U.S. at 781; *Morrissey*, 408 U.S. at 477 ("[P]arole is an established variation on imprisonment of convicted criminals."). Further, there is no constitutional right to parole or probation. *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011); *Graham v. State*, 202 Tenn. 423, 426, 304 S.W.2d 622, 623 (1957). Despite these differences, in *Morrissey*, the United States Supreme Court held that certain due process requirements for parole revocation were required. While not exhaustive for bail revocation proceedings, they provide useful guidance. These minimum requirements include: (a) written notice of the grounds for revocation; (b) disclosure of the evidence against the accused; (c) an opportunity for the accused to be heard in person and to present witnesses and documentary evidence; (d) the right to cross-examine adverse witnesses; (e) a 'neutral and detached' decision maker; and (f) a written statement by the decision maker as to the evidence relied on and the reasons for revoking parole. *Morrissey*, 408 U.S. at 489; *see also Gagnon*, 411 U.S. at 782 (adopting the *Morrissey* due process procedures as the requirements for probation revocation proceedings).

[8] Tennessee Code Annotated section 40-11-118 provides, in pertinent part:

(b) In determining the amount of bail necessary to reasonably assure the appearance of the defendant while at the same time protecting the safety of the public, the magistrate shall consider the following:

(continued…)

Revocation will be appropriate in cases where the court finds that the imposition of additional bail conditions or an increased amount of bail would not be sufficient to assure the defendant's appearance at trial or protect the public's safety.

## III. Conclusion

We hold that Ms. Burgins has a constitutional right to pretrial bail, but this right is not absolute and is subject to forfeiture. We remand this case to the trial court for a bail revocation hearing to be conducted expeditiously according to the procedure established in this opinion. It appearing from the record that Ms. Burgins is indigent, we assess the costs of this appeal to the State of Tennessee.

_____
SHARON G. LEE, CHIEF JUSTICE

_____

(…continued)

(1) The defendant's length of residence in the community;

(2) The defendant's employment status and history and financial condition;

(3) The defendant's family ties and relationships;

(4) The defendant's reputation, character and mental condition;

(5) The defendant's prior criminal record, record of appearance at court proceedings, record of flight to avoid prosecution or failure to appear at court proceedings;

(6) The nature of the offense and the apparent probability of conviction and the likely sentence;

(7) The defendant's prior criminal record and the likelihood that because of that record the defendant will pose a risk of danger to the community;

(8) The identity of responsible members of the community who will vouch for the defendant's reliability; however, no member of the community may vouch for more than two (2) defendants at any time while charges are still pending or a forfeiture is outstanding; and

(9) Any other factors indicating the defendant's ties to the community or bearing on the risk of the defendant's willful failure to appear.

Tenn. Code Ann. § 40-11-118(b).