FILED
09/10/2019
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 2, 2019 Session

## STATE OF TENNESSEE EX REL. RACHEL BETH HAYNES v. ALLAN VINCENT DAUGHERTY

**Appeal from the Circuit Court for Rutherford County**
**No. 57095    Diana Benson Burns, Magistrate**

_____

### No. M2018-01394-COA-R10-CV

_____

W. NEAL MCBRAYER, J., concurring in part and dissenting in part.

When Allan Daugherty fell behind in paying child support for his three children, the State of Tennessee, acting on behalf of the children's mother, filed a petition for civil contempt. Mr. Daugherty and the State agreed on the amount of the child support arrearage, $10,288.57, and Mr. Daugherty further agreed that an automatic attachment could issue for his arrest if he failed to pay child support for a thirty-day period. The circuit court confirmed an agreed order reflecting both of these agreements.

Mr. Daugherty failed to pay as promised. And the court entered an order for Mr. Daugherty's arrest with a "**cash bond** of $13,413.45." The order further provided that, upon payment, the bond funds would be forwarded to the State and applied to Mr. Daugherty's child support arrearage.

The court entered its order for Mr. Daugherty's arrest relying on Tennessee Code Annotated § 36-5-101(f)(2) (2017). As the majority explains, the subsection provides for two types of bonds in child support enforcement proceedings. One type of bond secures the child support obligor's appearance in court. The other type of bond secures the child support obligation. The parties agree that the court was attempting to set the former type of bond, an appearance bond. The statute does not specify that an appearance bond must be in cash, but it does set minimum and maximum limits on the amount of the bond. The bond must be "not less than two hundred fifty dollars ($250)" or in excess of "the amount of the [child support] arrears." Tenn. Code Ann. § 35-5-101(f)(2).

The sole issue this Court accepted for review in this interlocutory appeal was "whether the trial court erred in requiring a cash bond." I agree with the majority that the circuit court did so in this case. An attachment of the obligor parent and the setting of an

appearance bond are "in the discretion of the court." *Id.* Just because a parent agrees that "an automatic attachment may issue" for lack of payment does not compel the court to grant one. The record suggests only a slight risk that Mr. Daugherty would not appear "for such other proceedings as may be held in the matter." *See id.* After all, Mr. Daugherty had appeared and participated in recent child support enforcement proceedings before the same court. Once the court exercised its discretion to have Mr. Daugherty arrested, the court failed to take the statute or relevant facts into account in restricting the bond to cash only. *See Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) ("Discretionary decisions must take the applicable law and the relevant facts into account."). The error was compounded by setting the bond amount at the statutory maximum.

I depart from the majority on the scope of its holding and its resort to the federal and state constitutions. Rather than reversing simply on the basis of an abuse of discretion, the majority accepts Mr. Daugherty's invitation to examine the legality of cash-only bonds. He frames the issue as whether, in a child support enforcement proceeding, it is "legal in Tennessee to set a bail bond payable only in cash." Because my answer is "yes," I respectfully dissent.

Mr. Daugherty makes statutory arguments for why a bond payable only in cash is illegal, all of which I find unpersuasive, as apparently does the majority. The statute authorizing the setting of an appearance bond for child support enforcement proceedings does not specify any certain type of bond. *See id.* In light of the lack of specificity, Mr. Daugherty argues that appearance bonds in child support enforcement proceedings should be "treated like a[ny] bail bond." He claims a statutory right to bail by a professional bail bondsman or corporate surety. *See id.* § 40-11-122(3) (2018). But, as the State points out, the statute upon which Mr. Daugherty relies applies in criminal matters. *See Leighton v. Henderson*, 407 S.W.2d 177, 178 (Tenn. 1966) (observing that bail statutes found in the Criminal Code do "not have any application to habeas corpus cases which are civil in nature"). And this is not a criminal matter.

Mr. Daugherty argues that the criminal bail statutes are applicable in this instance because this is a contempt proceeding. Under Tennessee Code Annotated § 29-9-106(a) (2012), "[u]pon an attachment to answer for a contempt, except in not performing a decree, the officer executing the process shall take bail from the defendant as in other cases." Mr. Daugherty reads "other cases" in the statute to include criminal cases, so according to him, the bail for his alleged contempt would be taken just as it would be in a criminal case. The fault in his argument is apparent from the statute's language. The statute excepts from its scope a contempt such as that allegedly committed by Mr. Daugherty, the failure to perform a child support decree.

2

I find Mr. Daugherty's reliance on Tennessee Rule of Criminal Procedure 42(b)(3) unavailing for much the same reason. The rule applies to criminal contempts, which are not at issue here.

Ultimately, the majority accepts Mr. Daugherty's argument that a cash-only appearance bond violates his rights under article I, section 15 of the Tennessee Constitution. The section in question, found in our Constitution's Declaration of Rights, provides "[t]hat all prisoners shall be bailable by sufficient sureties, unless for capital offences, when the proof is evident, or the presumption great." TENN. CONST. art. I, § 15.

The initial question is whether article I, section 15 applies to a child support enforcement proceeding, a civil matter, at all. The majority concludes that the section "appl[ies] to any action resulting in pretrial imprisonment." It reasons that limiting the right to "criminal cases, would ignore the broader liberty interests that this provision protects, and it would undermine the framers' intent to have a consistent administration of bail."

I am not convinced that the right recognized by article I, section 15 extends outside of the context of criminal prosecutions. After all, our supreme court described section 15 as "grant[ing] a defendant the right to pretrial release on bail pending adjudication of criminal charges." *State v. Burgins*, 464 S.W.3d 298, 304 (Tenn. 2015); *see also Swain v. State*, 527 S.W.2d 119, 120 (Tenn. 1975) ("In Tennessee it has for many years been recognized that the constitutional guarantee of bail exists only for criminal defendants before conviction."). But I need not resolve that question because I do not read article I, section 15 as prohibiting a bail payable only in cash.

The majority disagrees with this conclusion. Having determined that article I, section 15 applies to civil as well as criminal proceedings, it holds that "[a]llowing the court the discretion to require a cash-only appearance bond where a bond with sufficient sureties is a reasonable option would violate the spirit of Article I, section 15, which is to limit the court's discretion in determining who is entitled to pretrial release."

As the majority points out, both the Court and the Attorney General have reached this same conclusion previously. In *Lewis Bail Bond Co. v. General Sessions Court of Madison County*, an unreported decision, the Court stated that "if a cash-only deposit was required of a defendant who had real estate or other sufficient surety, but not cash" it would "effectively detain the accused" in violation of article I, section 15. No. C-97-62, 1997 WL 711137, at *5 (Tenn. Ct. App. Nov. 12, 1997). Relying in part on *Lewis Bail Bond Co.*, the Attorney General opined that "[b]y requiring a defendant to post a particular type of bond, a defendant who has other 'sufficient sureties,' but not the required type, would be denied his or her constitutional right to bail by 'sufficient sureties.'" Constitutionality of Proposed Legislation Granting Judges the Authority to

3

Order a Cash Deposit Bond in Certain Cases, Tenn. Op. Att'y Gen. No. 03-054 (2003). Yet, I read article 1, section 15 of our Constitution differently.

In my view, the operative clause of article 1, section 15 is "all prisoners shall be bailable." *See* Ariana Lindermayer, Note, *What the Right Hand Gives: Prohibitive Interpretations of the State Constitutional Right to Bail*, 78 Fordham L. Rev. 267, 277 (2009). As the colonists were gaining independence, "[t]he advent of severe penalties [in English criminal law] caused pretrial detention to become more frequent and bail to become more important." June Carbone, *Seeing Through the Emperor's New Clothes: Rediscovery of Basic Principles in the Administration of Bail*, 34 Syracuse L. Rev. 517, 529 (1983). So "English law took great pains to define who should be let to bail and who should be detained, and to insure, for the protection of the community as well as the defendant, that the system was not abused." *Id.* The language "all prisoners shall be bailable" mimics English law in that it serves to "proscribe[] governmental discretion to deny bail" with a limited exception. Matthew J. Hegreness, *America's Fundamental and Vanishing Right to Bail*, 55 Ariz. L. Rev. 909, 938-39 (2013); *see also Fredette v. State*, 428 A.2d 395, 402 (Me. 1981) (interpreting the meaning of "except for capital offences, where the proof is evident or the presumption great" under the Constitution of Maine). As our supreme court explained, under the section, "except in capital cases, the right to bail is mandatory." *Wallace v. State*, 245 S.W.2d 192, 194 (Tenn. 1952).

The majority reads the next phrase of the section, "by sufficient sureties," as prohibiting a trial court from mandating a specific type of bail, here cash-only bail. While "surety" at one time meant a third person who bound himself for the obligations of another, "[i]n America, the [bail] system became purely pecuniary." Hegreness, *supra* at 939. A "surety" might refer to "even the 'money' itself." *Id.* As the United States Supreme Court observed early in the last century, "[t]he distinction between bail and suretyship is pretty nearly forgotten." *Leary v. United States*, 224 U.S. 567, 575 (1912).

Like the Supreme Court of Wyoming when called on to interpret a similar provision in the Wyoming Constitution, I read "by sufficient sureties" as an acknowledgment that, although bail may be mandatory, the trial court maintains some discretion in selecting the appropriate amount and type of bail, which "can include cash-only bail." *Saunders v. Hornecker*, 344 P.3d 771, 781 (Wyo. 2015); *see also Fragoso v. Fell*, 111 P.3d 1027, 1033 (Ariz. Ct. App. 2005) ("[T]he sufficient sureties clause in Arizona's Constitution simply confirms the primary purpose of bail—to ensure a defendant's appearance to answer to the charges and submit to any ultimate judgment of the court."). Such an interpretation is entirely consistent with the recognized purposes behind article 1, section 15 of the Tennessee Constitution. By making the right to bail mandatory, article 1, section 15 "permits the unhampered preparation of a defense, . . . serves to prevent the infliction of punishment prior to conviction," *Stack v. Boyle*, 342 U.S. 1, 4 (1951), and "accommodates the defendant's interest in pretrial liberty." *Burgin*, 464 S.W.3d at 303. By conditioning the bail on "sufficient sureties" as determined by the

4

court, the section protects "society's interest in assuring the defendant's presence at trial." Donald B. Verrilli, Jr., Note, *The Eighth Amendment and the Right to Bail: Historical Perspectives*, 82 Colum. L. Rev. 328, 329-30 (1982) (quoted with approval in *Burgin*, 464 S.W.3d at 303).

I acknowledge that a cash-only appearance bond should be a rare occurrence. But a cash-only bond may be appropriate in some instances. As the State argues, a cash-only bond gives the parent a clear idea of the risk of failing to appear, "and in the event the parent does not appear after posting bond, it makes the full bond amount immediately available for payment toward the support owed."

The majority also concludes that a trial court's discretion to require a cash-only appearance bond is constrained by the equal protection and due process guarantees of the United States and Tennessee Constitutions. I would not reach these issues because they were not raised by Mr. Daugherty in his initial brief. The only constitutional provision cited by Mr. Daugherty is article I, section 15 of the Tennessee Constitution. He does not cite to the U.S. Constitution until his reply brief, and even then he only cites to the Fourth and Fourteenth Amendments. As a result, the State has not had an opportunity to address the equal protection and due process concerns with cash-only bail noted by the majority.

Generally speaking, this Court only addresses the issues raised by the parties. Tenn. R. App. P. 13(b); *Hodge v. Craig*, 382 S.W.3d 325, 334 (Tenn. 2012). I see no reason to depart from that practice in this case.

_____
W. NEAL McBRAYER, JUDGE