IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

## STATE OF TENNESSEE v. HEATHER JACKSON

**Criminal Court for Hamblen County**
**No. 2024-CR-340**

_____

**No. E2025-00965-CCA-R8-CO**

_____

## ORDER

The Defendant, Heather Jackson, through counsel, has filed a motion for review of the Hamblen County Criminal Court's revocation of her pretrial bail. *See* Tenn. Code Ann. § 40-11-144; *see also* Tenn. R. App. P. 8. The Defendant asserts that the trial court improperly revoked her pretrial bail, *sua sponte*, when the Defendant decided not to enter a guilty plea at the plea submission hearing and, instead, asserted her right to a jury trial. The Defendant argues that the trial court's summary revocation of her pretrial bail— without notice, a hearing, or requiring the State to establish by a preponderance of evidence a statutory basis for revoking her pretrial bail—does not comport with due process. *See State v. Burgins*, 464 S.W.3d 298, 306 (Tenn. 2015). The court has determined that a response from the State is not necessary in this matter.[1] Upon full consideration, the Defendant's motion is GRANTED, and this matter is remanded for further proceedings consistent with this court's order.

Rule 8 of the Tennessee Rules of Appellate procedure provides the procedural framework for obtaining appellate review of the trial court's actions regarding a defendant's release. Tenn. Code Ann. § 40-11-144. For this court to conduct its review, and because generally there is no record on appeal when a defendant seeks review of a trial

---

[1] The Defendant and her husband, Andrew, are charged as codefendants in this case. Both were scheduled to enter guilty pleas on May 19, 2025. Both asserted their right to proceed to trial on May 20, 2025. The trial court summarily revoked their pretrial bail that same day. On June 12, 2025, Mr. Jackson filed a motion for review challenging the trial court's revocation of pretrial bail. The State conceded that the trial court violated Mr. Jackson's due process rights by summarily revoking his pretrial bail without a hearing. On July 1, 2025, this court concluded that the trial court abused its discretion by revoking Mr. Jackson's pretrial bail without holding a hearing in compliance with *Burgins* and remanded Mr. Jackson's case for the entry of an order immediately reinstating Mr. Jackson to pretrial bail with the same conditions and terms previously imposed. *State v. Jackson*, No. E2025-00885-CCA-R8-CO (Tenn. Crim. App. July 1, 2025) (Order).

court's actions in this type of situation, it is a defendant's responsibility to provide this court with an *ad hoc* record of the proceeding below. The Defendant's motion for review is sufficient for this court's adjudication.

## FACTUAL BACKGROUND

On May 14, 2024, the Defendant was arrested for theft of property valued at more than $10,000 but less than $60,000 involving her allegedly taking twenty-seven head of cattle from a nearby farm. The Defendant was released on $100,000 bail and ordered to have no contact with the victims. On November 1, 2024, a Hamblen County Criminal Court grand jury indicted the Defendant for one count of theft of property valued at more than $10,000 but less than $60,000.

On May 19, 2025, the Defendant appeared for a plea submission hearing during which it became apparent that the restitution amount remained unresolved.[2] The trial court reset the matter for further hearing on the following day. At the May 20, 2025 hearing, the Defendant asserted her right to proceed to trial. The trial court set the matter for trial on September 24, 2025, and summarily revoked the Defendant's bail. In so doing, the trial court stated, "In accordance with the formal circumstances that we pull this off a trial date to have a plea, plea agreement is not going to be entered into, so your bond will be revoked." The trial court then filed a "Mittimus for Jail After Verdict" revoking the Defendant's bail, and ordered the Defendant held without bail until the September 24, 2025 trial. On May 27, 2025, the Defendant filed a motion requesting that she be returned to bail. In the motion, the Defendant argued that the trial court's summary revocation of bail did not comport with the due process requirements related to the revocation of pretrial bail as promulgated in *Burgins*.

On June 2, 2025, the trial court held a hearing on the Defendant's motion for bail. The trial court recalled that, on May 19, 2025, the court had held an in-chambers hearing during which the trial court informed the Defendant that her bail "was potentially going to be revoked" if the Defendant decided not to enter the plea and proceed to trial. The trial court further stated that the Defendant's bail was revoked because the trial court "felt like the Jacksons were impacting the orderly administration of justice by reset—or asking the case to be placed on the plea docket rather than the trial docket and then not complying with—whatever terms they had with the state, and then requesting it to be reset to the

---

[2] The court notes the Third Judicial District includes Hamblen, Hancock, Hawkins, and Greene Counties. Discussions between the trial court and the parties at the May 19, 2025 plea submission hearing reveal that the hearing was held on the next to the last day of the trial court's Hamblen County term. Although the trial court offered to hold a restitution hearing in an adjacent county sometime in June, the State opposed holding a hearing away from Hamblen County due to the ages of the victims in this case. The next available date in Hamblen County would, therefore, not occur until September 2025.

following term to be able to have a trial." The Defendant argued that "she was not aware of the amount of restitution prior to [the plea hearing date], so that's where [the plea agreement] had fallen through." The Defendant requested that she be released pending a *Burgins* hearing.

Following an in-chambers hearing on June 2, 2025, the trial court made additional findings on the record upon request of the parties. The trial court said,

> First and foremost, they were requesting a *Burgins* hearing and the court is of the opinion that the court *sua sponte* revoked the Jacksons' bond based on them through their attorneys announcing that they wanted to accept the plea agreement that was conveyed by the State of Tennessee setting the case for plea and then actually starting a plea and the plea from the court's perspective, the Jacksons determined that they did not want to accept that plea agreement that was offered to them by the State of Tennessee, and therefore, the court made a determination to allow the case to be reset one day for the Jacksons to fully contemplate and decide they wanted to move forward with that. They wanted to discuss that with their family and any other individuals that were appropriate, obviously their attorneys.

> But before that occurred, the court had a chambers conversation involving the state and involving defense counsel for both Mrs. Jackson and Mr. Jackson. And during that chambers conference it was relayed to the court and the state . . . that the Jacksons . . . had indicated that they did want to accept the plea and were going to accept the plea, that [counsel] was requesting some additional information from the Jacksons to be able to offset or credit towards the restitution amount that was being sought by the state, that that information was not forthcoming from the Jacksons, that the Jacksons had been somewhat difficult to get ahold of at that point in time, . . . and that the Attorney General's office had conveyed the offer, that the lawyers were aware of the offer and they were . . . hoping to be able to ask for a restitution hearing, but they understood that that was not included in the offer from state, that that had not been included in the offer from the state, but they were hoping to be able to ask for a restitution hearing because that the Jacksons had not provided whatever information it was that they had hoped to be able to present to the DA's office . . . and get a credit or reduction [on the restitution amount]. The court took those additional statements into consideration, the fact that the DA's office had made an offer, the fact that . . . the state had not tried to alter the deal. That was what the court was concerned about when I went to chambers [on May 19] is was there in fact a deal or was there not in fact a deal and whether or not the state was trying to

3

alter the terms of the deal as had been conveyed . . . . And the court was assured . . . was assured by defense counsel . . . that that was not the case, the state was not altering anything and that [counsel] was trying to do the best he could to protect the interest of her client.

And so the court is of the opinion the court conducted a sufficient *Burgins* hearing. The court . . . discussed with both attorneys the long-standing policy of the court that if you change a plea agreement and you back out of it, then it has adverse consequences for your bond. The court relayed that as well and reset the case one day to give the parties the opportunity to have the conversation they wanted to with their family and any other individuals, obviously their attorneys as well. And then it was the following day Mrs. Jackson and Mr. Jackson both indicated that they did not wish to move forward with the agreement and the court revoked their bonds separately.

. . . .

[T]he court *sua sponte* revoked the bond in compliance with the court's long-standing policy . . . . [and] that over the course of three different dates at issue here, that we had the announcement date, the plea date and the subsequent plea date[–w]hen you take all that together, it is the court's opinion that the court *sua sponte* revoked the bond of the Jacksons sufficient to comply with the *Burgins* requirements for the detrimental impact on the orderly administration of justice, and therefore, the court is now of the opinion that a new *Burgins* hearing is not required.

. . . .

The court denies the motion for immediate release and the court finds that a *Burgins hearing* . . . did occur. And so in that, it was not a motion for the state to revoke bond based on new charges or something of that nature. It was something that occurred in court and the court *sua sponte* took the action that it did.

## ANALYSIS

Article I, section 15 of the Tennessee Constitution guarantees a defendant the right to bail in all except capital cases. *Burgins*, 464 S.W.3d at 306; *see also* Tenn. Code Ann. § 40-11-102. "Bail must be set as low as the court determines is necessary to reasonably ensure the safety of the community and the appearance of the defendant as required."

4

Tenn. Code Ann. § 40-11-118(a)(2). "In determining the amount of bail necessary to reasonably assure the appearance of the defendant while at the same time protecting the safety of the public," a trial court must consider certain specific criteria. Tenn. Code Ann. § 40-11-118(b). The overall goal of an appearance bail and any conditions placed upon the defendant's release is to ensure the defendant's appearance in court and to protect the safety of the public.

"The trial court has very wide latitude in setting bail" and this Court should be "most reluctant to second-guess" the trial court's decision. *State v. Melson*, 638 S.W.2d 342, 358 (Tenn. 1982). Indeed, this court reviews the actions of a trial court regarding a defendant's release under an abuse of discretion standard. *See, e.g.*, Tenn. Code Ann. § 40-26-103. Our supreme court has stated that the abuse of discretion standard of review is a "less rigorous review" of a trial court's decision and does not permit this court to substitute its judgment for that of the trial court. *State v. McCaleb*, 582 S.W.3d 179, 185 (Tenn. 2019) (quoting *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). A trial court abuses its discretion when it "applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused injustice to the party complaining." *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997).

In *Burgins*, the supreme court held that the right to pretrial bail was not absolute and may be forfeited under certain circumstances provided in Tennessee Code Annotated section 40-11-141(b). *Burgins*, 464 S.W.3d at 306. However, a trial court's revocation of pretrial bail must comport with due process. *Id*. at 310. As the court explained

> The defendant is entitled to 1) written notice of the alleged grounds for revocation and the date, place, and time of the hearing, 2) disclosure of the evidence against him or her, 3) the meaningful opportunity to be heard and to present evidence, 4) the right to confront and cross-examine witnesses, and 5) the right to make arguments in his or her defense. The trial court must conduct an evidentiary hearing at which the State is required to prove, by a preponderance of the evidence, sufficient ground(s) under Tennessee Code Annotated section 40-11-141(b) to support a revocation. The evidentiary hearing need not be a mini-trial of the alleged conduct constituting the ground(s) for revocation. Moreover, the requirements for the revocation proceeding shall be somewhat flexible in that the trial court shall be able to consider factual testimony and documentary proof supporting the grounds for revocation of pretrial bail. In addition to documentary proof, the State must also present testimony from a corroborating witness or witnesses as to facts supporting the allegations contained in the documents. Hearsay evidence may be admitted when the trial court finds that it is reliable. *See generally State v. Wade*, 863 S.W.2d 406 (Tenn. 1993). At the close of

5

proof, if the trial court finds that the State has shown, by a preponderance of the evidence, that the defendant has violated a condition of release, has committed a criminal offense while released on bond, or has engaged in conduct resulting in the obstruction of the orderly and expeditious progress of the trial or other proceedings, then the trial court may either revoke bail and hold the defendant until trial or continue bail with the possibility of additional conditions or an increased bond amount. In determining which option is appropriate, the trial court should consider 1) whether any additional bail conditions or an increased amount of bail would assure the appearance of the defendant at trial and protect the safety of the community under Tennessee Code Annotated section 40-11-116 and 2) the bail factors listed in Tennessee Code Annotated section 40-11-118(b). Revocation will be appropriate in cases where the court finds that the imposition of additional bail conditions or an increased amount of bail would not be sufficient to assure the defendant's appearance at trial or protect the public's safety.

*Burgins*, 464 S.W.3d at 310-11.

As previously stated, the record reflects that the trial court based its revocation of pretrial bail based upon its "long-standing policy" of revoking pretrial bail when a defendant changes her mind on the day of a plea submission hearing and asserts her right to trial. Indeed, the trial court recounted at the June 2, 2025 hearing that the trial court had "discussed with both attorneys the long-standing policy of the court that if you change a plea agreement and you back out of it, then it has adverse consequences to your bond." The trial court further found that "over the course of three different dates at issue here, that we had the announcement date, the plea date and the subsequent plea date[–w]hen you take all that together . . . the court *sua sponte* revoked the bond . . . [based upon] the detrimental impact on the orderly administration of justice." *See* Tenn. Code Ann. § 40-11-118(b).

The State conceded in its response to Mr. Jackson's motion for review that "the trial court denied the Defendant due process by revoking his bond without a hearing." We agreed and reinstated Mr. Jackson's bail and remanded the case. The *ad hoc* records in each matter are identical, as are the trial court's rulings. Therefore, the State need not file a response. The record shows that the trial court did not hold a bail revocation hearing that complied with the dictates of *Burgins*. Although the record reflects that the court conducted an in-chambers conference, which it later described as having been a *de facto Burgins* hearing, the record fails to reflect that the court considered any additional bail conditions or an increase in the amount of bail. Tenn. Code Ann. § 40-11-116. The trial court did not give the requisite consideration to the bail factors outlined in Code section 40-11-118(b). Consequently, the trial court failed to make any finding that "the imposition of additional bail conditions or an increased amount of bail would not be

6

sufficient to assure the defendant's appearance at trial or protect the public's safety." *Burgins*, 464 S.W.3d at 311.

Finally, we note the trial court's reference to its "long-standing policy" as a basis to summarily revoke bail, and we take this opportunity to caution that a policy of summarily revoking bail when a defendant exercises his or her constitutional right to trial "may implicate certain constitutional protections." *State v. Pennington*, 952 S.W.2d 420, 423 (Tenn. 1997). The procedure which *Burgins* affords a criminal defendant facing a bond revocation must be tailored to ensure that the proceeding comports with due process.

## CONCLUSION

Accordingly, we conclude that the trial court committed an abuse of discretion by revoking the Defendant's pretrial bail without holding a hearing in compliance with *Burgins*. The Defendant's motion for review is GRANTED. This matter is REMANDED to the trial court for the entry of an order immediately reinstating the Defendant to pretrial bail with the same conditions and terms as previously imposed. Any further effort to revoke the Defendant's pretrial bail shall comport with due process as promulgated in *Burgins*. The costs associated with this action are taxed to the State of Tennessee.

JUDGE ROBERT H. MONTGOMERY, JR.
JUDGE TOM GREENHOLTZ
JUDGE STEVEN W. SWORD